## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC.,[1] | Case No. 18-_____ (___) |
| Debtor. | |

## DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

HCR ManorCare, Inc., the above-captioned debtor and debtor in possession (the "Debtor" and, together with its non-debtor affiliates, the "Company"), submits this application (this "Section 156(c) Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), appointing Epiq Bankruptcy Solutions, LLC ("Epiq") as the claims and noticing agent in the Debtor's chapter 11 case pursuant to 28 U.S.C. § 156(c), section 105(a) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), effective *nunc pro tunc* to the Petition Date (as defined below). In support of this Section 156(c) Application, the Debtor submits the *Declaration of Kathryn Tran in Support of the Debtor's Application for Entry of an Order Appointing Epiq Bankruptcy Solutions, LLC as Claims and Noticing Agent, Nunc Pro Tunc to the Petition Date* (the "Tran Declaration"), attached hereto as **Exhibit B**, and the *Declaration of John R. Castellano, Chief Restructuring*

---

[1] The last four digits of the Debtor's federal tax identification number are 9231. The Debtor's mailing address is 333 N. Summit St., Toledo, OH 43604.

*Officer of HCR ManorCare, Inc., in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "Castellano Declaration"),[2] filed contemporaneously herewith and incorporated herein by reference.   In further support of this Section 156(c) Application, the Debtor respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues, through its direct and indirect non-debtor subsidiaries, to operate the Company's businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent, pursuant to Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Section 156(c) Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and other bases for the relief requested in this Section 156(c) Application are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule

---

[2] All capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Castellano Declaration.

01:22949722.1

2002, Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## THE PREPACKAGED PLAN OF REORGANIZATION

5.      Concurrently with this Motion, the Debtor filed a prepackaged plan of reorganization (the "Plan") and a related disclosure statement.  The Debtor has also filed a motion seeking to schedule (i) a combined hearing for the Court to consider approval of the disclosure statement and the prepetition solicitation procedures, as well as confirmation of the Plan and (ii) related objection and other deadlines.  The only class of creditors entitled to vote on the Plan has voted unanimously in favor of confirming the Plan.

## BACKGROUND OF THE COMPANY

6.      Additional information regarding the Debtor, the Company's business segments, and the events preceding the Petition Date may be found in the Castellano Declaration.

## RELIEF REQUESTED

7.      By this Section 156(c) Application, the Debtor requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, appointing Epiq to act as the claims and noticing agent in the Debtor's chapter 11 case (the "Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), in order to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's case, *nunc pro tunc* to the Petition Date.  The terms of Epiq's proposed retention are set forth in that certain Standard Services Agreement between Epiq and the Debtor, dated as of September 6, 2017 (the

"Retention Agreement"),[3] a copy of which is attached hereto as **Exhibit C**. Notwithstanding the terms of the Retention Agreement, the Debtor is seeking to retain Epiq solely on the terms set forth in this Section 156(c) Application and the Proposed Order.

8.    By separate application, the Debtor will seek authorization to retain and employ Epiq as administrative advisor in this chapter 11 case pursuant to section 327(a) of the Bankruptcy Code, as the administration of this chapter 11 case will require Epiq to perform duties outside the scope of 28 U.S.C. § 156(c).

## EPIQ'S QUALIFICATIONS AND THE NEED FOR EPIQ'S SERVICES

9.    Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[4]

10.    The appointment of Epiq as the Claims and Noticing Agent in this chapter 11 case will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this chapter 11 case, and relieve the Clerk of these administrative burdens. Given the nature of this chapter 11 case, the Debtor believes that the appointment of Epiq as the Claims and Noticing Agent will serve to maximize the value of the Debtor's estate for all stakeholders.

---

[3] Epiq has agreed to provide claims and noticing services to the Debtor at the rates stated on the pricing schedule attached to the Retention Agreement. Epiq may provide such services at the same rates to counsel for any official committee appointed in this chapter 11 case, and any other party in interest upon request.

[4] See, e.g., In re Herald Media Holdings, Inc., Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); In re Maurice Sporting Goods, Inc., Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017); In re Model Reorg Acquisition, LLC, Case No. 17-11794 (CSS) (Bankr. D. Del. Aug. 29, 2017); In re The Original Soupman, Inc., Case No. 17-11313 (LSS) (Bankr. D. Del. Jun. 20, 2017); In re CST Indus. Holdings Inc., Case No. 17-11292 (BLS) (Bankr. D. Del. Jun. 13, 2017); In re Tidewater Inc., Case No. 17-11132 (BLS) (Bankr. D. Del. May 19, 2017); In re Key Energy Servs., Inc., Case No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016).

### SCOPE OF SERVICES

11.     This Section 156(c) Application pertains only to the services to be performed by Epiq under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f).  Any services to be performed by Epiq that are set forth in the Retention Agreement but are outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Proposed Order.  Specifically, Epiq will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"):

(a)     Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

(b)     Maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtor's known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules

indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)    For *all* notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)    Maintain an electronic platform for purposes of filing proofs of claim;

(i)    Maintain the official claims register the Debtor (the "Claims Register") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the Debtor, and (vii) any disposition of the claim;

(j)    Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(k)    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

(l)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e); provided, however, that if any evidence of transfer of claim is filed with the Court pursuant to Bankruptcy Rule 3001(e), and if the evidence of transfer or notice thereof executed by the parties purports to waive the twenty-one (21)-day notice and objection period required under Bankruptcy Rule 3001(e), then Epiq may process the transfer of claim(s) to change the name and address of the claimant of such claim to reflect the transfer, and the effective date of such transfer will be the date the evidence of such transfer was docketed in the case;

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to Epiq's offices, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register;

(p)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

(q)     If this chapter 11 case is converted to chapter 7 of the Bankruptcy Code, contact the Clerk within three (3) days of the notice to Epiq of entry of the order converting the case;

(r)     Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Epiq as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

(s)     Within seven (7) days of notice to Epiq of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case; and

(t)     At the close of this chapter 11 case, box and transport all original documents, in proper format, as provided by the Clerk, to (i) the Federal Archives Record Administration, located at 14700 Townsend Road, Philadelphia, PA 19154-1096 or (ii) any other location requested by the Clerk.

12.     The Claims Register shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Epiq.

## <u>COMPENSATION</u>

13.     The Debtor is proposing to compensate Epiq for the Claims and Noticing Services set forth above in accordance with the pricing schedule attached to the Retention Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by Epiq in the

01:22949722.1

performance of the above Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

14.     Epiq agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtor, counsel for the administrative agent under the Company's prepetition credit facility, counsel for any statutory committee, if any, monitoring the expenses of the Debtor, and any party in interest that specifically requests service of the monthly invoices.  If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

15.     Before the Petition Date, the Debtor provided Epiq a retainer in the amount of $25,000.00.  Epiq seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

16.     Additionally, under the terms of the Retention Agreement, the Debtor has agreed, subject to certain exceptions, to indemnify, defend and hold harmless Epiq and its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants and employees, under certain circumstances specified in the Retention Agreement, except in circumstances resulting from Epiq's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or the Proposed Order.  The Debtor believes that such an

indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this chapter 11 case.

## EPIQ'S DISINTERESTEDNESS

17.     Although this Section 156(c) Application does not propose to employ Epiq under section 327 of the Bankruptcy Code (as noted above, the Debtor will seek such retention by separate application), Epiq has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor.  Epiq has represented to the Debtor that to the best of its knowledge, and except as set forth in the Tran Declaration, neither Epiq nor any of its professionals have any relationship with the Debtor that would impair Epiq's ability to serve as Claims and Noticing Agent.  To the extent that Epiq or its personnel have, or may have had, relationships with certain of the Debtor's creditors as described in the Tran Declaration, Epiq has represented to the Debtor that those matters are unrelated to this chapter 11 case.

18.     Moreover, in connection with its retention as Claims and Noticing Agent, Epiq represents in the Tran Declaration, among other things, that Epiq is a "disinterested person" with respect to the matters upon which it is to be engaged as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Epiq and its professional personnel:

(a)     are not creditors, equity security holders, or insiders of the Debtor;

(b)     are not, and were not, within two years before the date of the filing of this chapter 11 case, directors, officers, or employees of the Debtor; and

(c)     do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

19.     Epiq further represents, among other things, as follows:

(a)     it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(b)     by accepting employment in this chapter 11 case, Epiq waives any right to receive compensation from the United States government in connection with this chapter 11 case;

(c)     in its capacity as Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)     Epiq will not employ any past or present employees of the Debtor in connection with its work as Claims and Noticing Agent.

20.     Epiq will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF REQUESTED

21.     The Court is permitted to appoint Epiq as Claims and Noticing Agent in this chapter 11 case.  Pursuant to 28 U.S.C. § 156(c), this Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases.  Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.

28 U.S.C. § 156(c).  Further, section 105(a) of the Bankruptcy Code provides, in pertinent part, as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by any party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary

> or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. See Fed. R. Bankr. P. 2002.  In addition, Local Rule 2002-1(f) provides that "[u]pon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)."  Del. Bankr. L.R. 2002-1(f).

22.    In view of the substantial number of parties receiving notice in this case, the Debtor submits that the appointment of Epiq as Claims and Noticing Agent is necessary and in the best interests of the Debtor and its estate and will serve to maximize the value of the Debtor's estate for all stakeholders.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

23.    The Debtor's selection of Claims and Noticing Agent to act as the claims and noticing agent has satisfied the Claims Agent Protocol, in that the Debtor has obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that Epiq's rates are competitive and reasonable given Epiq's quality of services and expertise.

## *NUNC PRO TUNC* RELIEF IS APPROPRIATE

24.    In accordance with the Debtor's request, Epiq has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that Epiq can be compensated for services rendered before approval of this Section 156(c)

01:22949722.1

Application.  The Debtor believes that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as proposed in this Section 156(c) Application, because Epiq has provided and continues to provide valuable services to the Debtor's estate during the interim period.

25.    Accordingly, the Debtor respectfully requests entry of the Proposed Order authorizing the Debtor to retain and employ Epiq as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date.

<u>**NOTICE**</u>

26.    Notice of this Section 156(c) Application will be provided to (i) the U.S. Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtor; (iii) counsel to Quality Care Properties, Inc.; (iv) counsel to the administrative agent under the Company's prepetition credit facility; (v) counsel to The Carlyle Group; (vi) the U.S. Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; and (viii) the U.S. Department of Justice.  Notice of this Section 156(c) Application and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

01:22949722.1

12

WHEREFORE, the Debtor respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested and any other relief as is just and proper.

Dated: March 4, 2018                           Respectfully submitted,
Wilmington, Delaware


                                               */s/ John R. Castellano*
                                               John R. Castellano
                                               Chief Restructuring Officer
                                               HCR ManorCare, Inc.

**<u>Exhibit A</u>**

**Proposed Order**

01:22949722.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC.,[1] | Case No. 18-_____ (___) |
| Debtor. | Ref. Docket No. ___ |

## ORDER APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC AS
## CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the application (the "Section 156(c) Application")[2] of the Debtor for entry of an

order (this "Order"), pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code,

Bankruptcy Rule 2002 and Local Rule 2002-1(f), appointing Epiq Bankruptcy Solutions, LLC

("Epiq") as the Claims and Noticing Agent in the Debtor's chapter 11 case, effective *nunc pro*

*tunc* to the Petition Date, to, among other things, (a) distribute required notices to parties in

interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the

Debtor's chapter 11 case, and (c) provide such other administrative services as required by the

Debtor that would fall within the purview of services to be provided by the Clerk's office; and

upon the Tran Declaration; and the Court being satisfied that Epiq has the capability and

experience to provide such services and that Epiq does not hold an interest adverse to the Debtor

or its estate respecting the matters upon which it is to be engaged; and the Court having

jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of*

*Reference* from the United States District Court for the District of Delaware, dated February 29,

2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and

---

[1] The last four digits of the Debtor's federal tax identification number are 9231.  The Debtor's mailing address is 333 N. Summit St., Toledo, OH 43604.

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Section 156(c) Application.

the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Section 156(c) Application being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the Section 156(c) Application having been given; and the relief requested in the Section 156(c) Application being in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Section 156(c) Application is GRANTED as set forth herein.

2.      Notwithstanding the terms of the Retention Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtor is authorized to retain Epiq as Claims and Noticing Agent in this chapter 11 case, effective *nunc pro tunc* to the Petition Date, under the terms of the Retention Agreement, and Epiq is authorized and directed to perform the Claims and Noticing Services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and all related tasks, as set forth in the Section 156(c) Application.

4.      Epiq shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case, and is authorized and directed to maintain the official Claims Register for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

01:22949722.1

5.      Epiq is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      Epiq is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.      Epiq shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      Without further order of this Court, the Debtor is authorized to compensate Epiq in accordance with the terms and conditions of the Retention Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by Epiq and the rates charged for each, and to reimburse Epiq for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Epiq to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      Epiq shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for the administrative agent under the Company's prepetition credit facility, counsel for any official committee, if any, monitoring the expenses of the Debtor and any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

01:22949722.1

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, Epiq's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtor's chapter 11 estate.

12.     Epiq may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and thereafter Epiq may hold the retainer during this chapter 11 case as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

13.     The Debtor is authorized to indemnify Epiq under the terms of the Retention Agreement, subject to the following modifications:

(a)     Epiq shall not be entitled to indemnification, contribution or reimbursement pursuant to the Retention Agreement for services other than the Claims and Noticing Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b)     The Debtor shall have no obligation to indemnify Epiq, or provide contribution or reimbursement to Epiq, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from Epiq's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of Epiq's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order;

(c)     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, Epiq believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, Epiq must file an application therefor in this Court, and the Debtor may not pay any such amounts to Epiq before the entry of an

order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Epiq for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify Epiq. All parties in interest shall retain the right to object to any demand by Epiq for indemnification, contribution, or reimbursement.

14.    In the event Epiq is unable to provide the Claims and Noticing Services, Epiq shall immediately notify the Clerk and the Debtor's counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

15.    The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by Epiq but are not specifically authorized by this Order.

16.    Epiq shall not cease providing Claims and Noticing Services during this chapter 11 case for any reason, including nonpayment, without an order of the Court authorizing Epiq to do so; provided that Epiq may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtor, the U.S. Trustee, and any official committee of creditors appointed, if any, in these cases by facsimile or overnight delivery; provided, further, that except as expressly provided herein, the Debtor and Epiq may otherwise terminate or suspend other services as provided under the Services Agreement.

17.    The Debtor and Epiq are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application.

18.    In the event of any inconsistency between the Retention Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

19.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     This Court shall retain jurisdiction over all matters arising from or related to the implementation, interpretation and enforcement of this Order.

Dated: _____, 2018
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Tran Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC., | Case No. 18-_____ (___) |
| Debtor.[1] | |

**DECLARATION OF KATHRYN TRAN IN SUPPORT OF DEBTOR'S APPLICATION
FOR ENTRY OF AN ORDER APPOINTING EPIQ BANKRUPTCY SOLUTIONS, LLC
AS CLAIMS AND NOTICING AGENT, *NUNC PRO TUNC* TO THE PETITION DATE**

I, Kathryn Tran, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information and belief:

1.     I am a Director with Epiq Bankruptcy Solutions, LLC ("Epiq"), with offices located at 777 3rd Ave., 12th Floor, New York, NY 10017.  I am authorized to submit this declaration (this "Declaration") in support of the *Debtor's Application for Entry of an Order Appointing Epiq Bankruptcy Solutions, LLC as Claims and Noticing Agent,* Nunc Pro Tunc *to the Petition Date* (the "Section 156(c) Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), Epiq will perform at the request of the Clerk the noticing and claims services specified in the Section 156(c) Application and Retention Agreement.  In addition, at the Debtor's request, Epiq will perform such other claims and noticing services specified in the Section 156(c) Application.  For

---

[1] The last four digits of the Debtor's federal tax identification number are 9231.  The Debtor's mailing address is 333 N. Summit St., Toledo, OH 43604.

[2] Each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Section 156(c) Application.

the avoidance of doubt, pursuant to the Retention Agreement, Epiq will perform the Claims and Noticing Services for the Debtor, as a debtor and debtor in possession in this chapter 11 case.

3.      Epiq is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases.  Epiq has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including the following recent cases filed in this District:  In re Herald Media Holdings, Inc., Case No. 17-12881 (LSS) (Bankr. D. Del. Dec. 8, 2017); In re Maurice Sporting Goods, Inc., Case No. 17-12481 (CSS) (Bankr. D. Del. Nov. 20, 2017); In re Model Reorg Acquisition, LLC, Case No. 17-11794 (CSS) (Bankr. D. Del. Aug. 29, 2017); In re The Original Soupman, Inc., Case No. 17-11313 (LSS) (Bankr. D. Del. Jun. 20, 2017); In re CST Indus. Holdings Inc., Case No. 17-11292 (BLS) (Bankr. D. Del. Jun. 13, 2017); In re Tidewater Inc., Case No. 17-11132 (BLS) (Bankr. D. Del. May 19, 2017); In re Key Energy Servs., Inc., Case No. 16-12306 (BLS) (Bankr. D. Del. Oct. 25, 2016).

4.      In connection with the preparation of this Declaration, I caused to be submitted for review by our conflicts system the names of all known potential parties in interest (the "Potential Parties in Interest") in this chapter 11 case.  The list of Potential Parties in Interest was provided by the Debtor and is attached hereto as **Schedule 1**.  Epiq is not aware of any relationship that would present a disqualifying conflict of interest.  To the extent that Epiq's conflicts check has revealed that certain Potential Parties in Interest were current or former clients of Epiq within the past three years, these parties have been identified on a list annexed hereto as **Schedule 2** (the "Client Match List").  However, given Epiq's neutral position as claims and noticing agent or administrative advisor for any parties listed on the Client Match List, Epiq does not view such relationships as real or potential conflicts.  Further, to the best of

01:22949722.1

my knowledge, any such relationship between Epiq and any parties on the Client Match List is completely unrelated to this chapter 11 case.

5.       The Debtor selected Epiq to serve as the Claims and Noticing Agent for the Debtor's estate, as set forth in more detail in the Section 156(c) Application.  To the best of my knowledge, neither Epiq nor any of its professionals have any relationship with the Debtor that would impair Epiq's ability to serve as Claims and Noticing Agent.

6.       Epiq has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this chapter 11 case.  Epiq has represented, and will continue to represent, clients in matters unrelated to this chapter 11 case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to these cases.

7.       Epiq is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that Epiq and its professionals:

(a)       are not creditors, equity security holders, or insiders of the Debtor;

(b)       are not, and were not, within two years before the date of the filing of this chapter 11 case, directors, officers, or employees of the Debtor; and

(c)       do not have an interest materially adverse to the interests of the Debtor's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor.

8.       Epiq has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, this chapter 11 case.  If Epiq's proposed retention is approved by this Court, Epiq will not accept any engagement or perform any service for any entity or person other than the Debtor in this chapter 11 case; provided, however, that the Debtor

01:22949722.1

3

intends to file a separate application to retain Epiq pursuant to Bankruptcy Code section 327 to provide additional services outside the scope of 28 U.S.C. §156(c).

9.    Epiq further represents as follows:

(a)    it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims and Noticing Agent;

(b)    by accepting employment in this chapter 11 case, Epiq waives any right to receive compensation from the United States government;

(c)    in its capacity as Claims and Noticing Agent, Epiq will not be an agent of the United States and will not act on behalf of the United States; and

(d)    Epiq will not employ any past or present employees of the Debtor in connection with its work as Claims and Noticing Agent.

10.    Subject to Court approval, the Debtor has agreed to compensate Epiq for professional services rendered pursuant to 28 U.S.C. §156(c) in connection with this chapter 11 case according to the terms and conditions of the Retention Agreement.  Payments are to be based upon the submission of a billing statement by Epiq to the Debtor after the end of each calendar month which includes a detailed listing of services and expenses.  Epiq has received a $25,000.00 retainer from the Debtor and will first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $25,000.00 and, thereafter, to hold the retainer as security of payment of Epiq's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

11.    Epiq will comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

*[Remainder of Page Intentionally Left Blank]*

01:22949722.1

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that, to the best of my knowledge after reasonable inquiry, the foregoing is true and correct.

Executed on this 4th day of March, 2018

*/s/ Kathryn Tran*
KATHRYN TRAN
Director

## **Schedule 1**

**Potential Parties in Interest**

# POTENTIAL PARTIES IN INTEREST — HCR MANORCARE, INC.

### Debtor

HCR ManorCare, Inc.

### Former, Assumed and Trade Names of the Debtor

HCRMC Operations, LLC
HCR ManorCare, LLC

### Current and Former Directors and Officers of the Debtor

Allen, Martin David
Bechtel, Karen H.
Beckert, Julie A.
Cavanaugh, Steven M.
Collins, Kevin P.
Dempsey, Rhonda
Edmiston III, Sherman
Emmett, Linda
Ferguson, R. Michael
Gladieux, Christine
Gloth, Mark J. DO
Gluch, Lynda
Grabijas, L. Martin
Graham, John K.
Harris, Jeff
Hash, Alan B.
Holt, Allan M
Hood, Lynn M.
Hoops, Kathryn Sue
Huber, John
Johnston, William P.
Julius, Robert Griffin
Kaczor, Elizabeth Mary
Kang, Matthew S.
Kight, Daniel Hill
Kile, Thomas R.
Lanning, David B.
Leonard, Tim
Mastrangelo (Howels), Janet A.
McBride, Mark
McMann, Scott H.
Mercier, Murry Jay
Milanich, Greg
Moore, Debra
Morey, Susan Elizabeth
Nation, Joylin
Neumann, Linda Ellen
Ormond, Paul A.
Parker, David Bruce
Parr II, Richard A.

Pagoaga, James Philip
Perry, Brian
Pompeo, Kirk
Reed, Michael John
Rice-White, DeLaine
Roggenbeck, Patricia
Rump, Richard G.
Ruppert, Mary Jane
Saddler MD, Stephen C.
Sharon, Robert
Shipman, Dean
Silverstein, Burton
Sorensen, Melissa
Talbert, Eric John
Ubaydi, Rami
Whetro, Angie
William, Kendra
Wise, Stephen H.
Young, Thomas L.

### Non-Debtor Affiliates

American Rehabilitation Group, LLC
Ancillary Services Management, LLC
Arden Courts of Akron OH, LLC
Arden Courts of Allentown PA, LLC
Arden Courts of Annandale VA, LLC
Arden Courts of Arlington TX, LLC
Arden Courts of Austin TX, LLC
Arden Courts of Avon Ct, LLC
Arden Courts of Bingham Farms MI, LLC
Arden Courts of Centreville VA, LLC
Arden Courts of Cherry Hill NJ, LLC
Arden Courts of Delray Beach FL, LLC
Arden Courts of Elk Grove Village IL, LLC
Arden Courts of Farmington Ct, LLC
Arden Courts of Ft. Myers FL, LLC
Arden Courts of Geneva IL, LLC
Arden Courts of Germantown MD, LLC
Arden Courts of Glen Ellyn IL, LLC
Arden Courts of Hamden Ct, LLC
Arden Courts of Hazel Crest IL, LLC
Arden Courts of Jefferson Hills PA, LLC
Arden Courts of Kensington MD, LLC
Arden Courts of Kenwood OH, LLC
Arden Courts of King of Prussia PA, LLC
Arden Courts of Largo FL, LLC
Arden Courts of Livonia MI, LLC
Arden Courts of Louisville KY, LLC
Arden Courts of Monroeville PA, LLC
Arden Courts of Northbrook IL, LLC
Arden Courts of Palm Harbor FL, LLC

Arden Courts of Palos Heights IL, LLC
Arden Courts of Parma OH, LLC
Arden Courts of Pikesville MD, LLC
Arden Courts of Potomac MD, LLC
Arden Courts of Richardson TX, LLC
Arden Courts of San Antonio TX, LLC
Arden Courts of Sarasota FL, LLC
Arden Courts of Seminole FL, LLC
Arden Courts of Silver Spring MD, LLC
Arden Courts of South Holland IL, LLC
Arden Courts of Sterling Heights MI, LLC
Arden Courts of Tampa FL, LLC
Arden Courts of Towson MD, LLC
Arden Courts of W. Orange NJ, LLC
Arden Courts of W. Palm Beach FL, LLC
Arden Courts of Wayne NJ, LLC
Arden Courts of Westlake OH, LLC
Arden Courts of Whippany NJ, LLC
Arden Courts of Wilmington De, LLC
Arden Courts of Winter Springs FL, LLC
Arden Courts of Yardley PA, LLC
Arden Courts-Anderson of Cincinnati OH, LLC
Arden Courts-Bainbridge of Chagrin Falls OH, LLC
Arden Courts-Fair Oaks of Fairfax VA, LLC
Arden Courts-Lely Palms of Naples FL, LLC
Arden Courts-North Hills of Pittsburgh PA, LLC
Arden Courts-Susquehanna of Harrisburg PA, LLC
Arden Courts-Warminster of Hatboro PA, LLC
Christopher East Health Care Center of Louisville
    KY, LLC
Columbia Rehabilitation and Nursing Center-
    Columbia SC, LLC
Devon Manor-Devon PA, LLC
Donahoe Manor-Bedford PA, LLC
Forest Bluff, Ltd.
Forum Purchasing LLC
Fostrian Courts Assisted Living-Flushing MI, LLC
Hampton House-Wilkes-Barre PA, LLC
HCR Canterbury Village, LLC
HCR Canterbury Village, LLC
HCR Healthcare, LLC
HCR Home Health Care and Hospice, LLC
HCR II Healthcare, LLC
HCR III Healthcare, LLC
HCR IV Healthcare, LLC
HCR Manor Care Services of Florida III, LLC
HCR Manor Care Services of Florida, LLC
HCR Manor Care Services, LLC
HCR ManorCare Heartland, LLC
HCR ManorCare Medical Services of Florida, LLC
HCR ManorCare Operations II, LLC
HCRMC-Promedica JV, LLC
Health Care and Retirement Corporation of America,
    LLC
Heartland Care, LLC
Heartland Employment Services, LLC

Heartland Healthcare Services, LLC
Heartland Home Care, LLC
Heartland Home Health Care Services, LLC
Heartland Hospice Services, LLC
Heartland of Adelphi MD, LLC
Heartland of Allen Park MI, LLC
Heartland of Ann Arbor MI, LLC
Heartland of Austin TX, LLC
Heartland of Battle Creek MI, LLC
Heartland of Beckley WV, LLC
Heartland of Bedford TX, LLC
Heartland of Bellefontaine OH, LLC
Heartland of Boca Raton FL, LLC
Heartland of Boynton Beach FL, LLC
Heartland of Brooksville FL, LLC
Heartland of Bucyrus OH, LLC
Heartland of Canton IL, LLC
Heartland of Canton MI, LLC
Heartland of Centerburg OH, LLC
Heartland of Centerville OH, LLC
Heartland of Champaign IL, LLC
Heartland of Chillicothe OH, LLC
Heartland of Clarksburg WV, LLC
Heartland of Dearborn Heights MI, LLC
Heartland of Decatur IL, LLC
Heartland of Eaton OH, LLC
Heartland of Fort Myers FL, LLC
Heartland of Galesburg IL, LLC
Heartland of Grand Rapids MI, LLC
Heartland of Greenville OH, LLC
Heartland of Henry IL, LLC
Heartland of Hillsboro OH, LLC
Heartland of Holland MI, LLC
Heartland of Hyattsville MD, LLC
Heartland of Ionia MI, LLC
Heartland of Jackson MI, LLC
Heartland of Jackson OH, LLC
Heartland of Jacksonville FL, LLC
Heartland of Kalamazoo MI, LLC
Heartland of Kendall FL, LLC
Heartland of Kettering OH, LLC
Heartland of Keyser WV, LLC
Heartland of Lauderhill FL, LLC
Heartland of Macomb IL, LLC
Heartland of Madeira OH, LLC
Heartland of Marietta OH, LLC
Heartland of Marion OH, LLC
Heartland of Martinsburg WV, LLC
Heartland of Marysville OH, LLC
Heartland of Mentor OH, LLC
Heartland of Miamisburg OH, LLC
Heartland of Moline IL, LLC
Heartland of Normal IL, LLC
Heartland of Orange Park FL, LLC
Heartland of Oregon OH, LLC
Heartland of Paxton IL, LLC

Heartland of Peoria IL, LLC
Heartland of Perrysburg OH, LLC
Heartland of Piqua OH, LLC
Heartland of Pittsburgh PA, LLC
Heartland of Platteville WI, LLC
Heartland of Portsmouth OH, LLC
Heartland of Rainelle WV, LLC
Heartland of Saginaw MI, LLC
Heartland of San Antonio TX, LLC
Heartland of Sarasota FL, LLC
Heartland of Springfield OH, LLC
Heartland of Tamarac FL, LLC
Heartland of Three Rivers MI, LLC
Heartland of Urbana OH, LLC
Heartland of Waterville OH, LLC
Heartland of Wauseon OH, LLC
Heartland of West Bloomfield MI, LLC
Heartland of West Houston TX, LLC
Heartland of Whitehall MI, LLC
Heartland of Zephyrhills FL, LLC
Heartland Pharmacy of Illinois, LLC
Heartland Pharmacy of Pennsylvania, LLC
Heartland Rehabilitation Extension Services, LLC
Heartland Rehabilitation Services of Florida, LLC
Heartland Rehabilitation Services of Kentucky, LLC
Heartland Rehabilitation Services of Michigan, LLC
Heartland Rehabilitation Services of New Jersey, LLC
Heartland Rehabilitation Services of Ohio, LLC
Heartland Rehabilitation Services of Virginia, LLC
Heartland Rehabilitation Services, LLC
Heartland Services, LLC
Heartland Therapy Provider Network, LLC
Heartland Village of Westerville OH (NC), LLC
Heartland Village of Westerville OH (RC), LLC
Heartland-Beavercreek of Dayton OH, LLC
Heartland-Briarwood MI, LLC
Heartland-Charleston of Hanahan SC, LLC
Heartland-Crestview MI, LLC
Heartland-Dorvin of Livonia MI, LLC
Heartland-Fairfield of Pleasantville OH, LLC
Heartland-Fostrian of Flushing MI, LLC
Heartland-Georgian Bloomfield of Bloomfield Hills MI, LLC
Heartland-Georgian East of Grosse Pointe MI, LLC
Heartland-Greenview MI, LLC
Heartland-Hampton of Bay City MI, LLC
Heartland-Holly Glen of Toledo OH, LLC
Heartland-Indian Lake of Lakeview OH, LLC
Heartland-Knollview MI, LLC
Heartland-Lansing of Bridgeport OH, LLC
Heartland-Miami Lakes of Hialeah FL, LLC
Heartland-Mt. Airy of Cincinnati OH, LLC
Heartland-Oak Pavilion of Cincinnati OH, LLC
Heartland-Oakland MI, LLC
Heartland-Pewaukee of Waukesha WI, LLC

Heartland-Plymouth Court MI, LLC
Heartland-Preston County of Kingwood WV, LLC
Heartland-Prestwick In, LLC
Heartland-Prosperity Oaks of Palm Beach Gardens FL, LLC
Heartland-Riverview of East Peoria IL (SNF), LLC
Heartland-Riverview of South Point OH, LLC
Heartland-South Jacksonville of Jacksonville FL, LLC
Heartland-University of Livonia MI, LLC
Heartland-Victorian Village of Columbus OH, LLC
Heartland-Washington Manor of Kenosha WI, LLC
Heartland-Willow Lane of Butler Mo, LLC
Heartland-Willowbrook of Houston TX, LLC
Heartland-Woodridge Assisted Living of Fairfield OH, LLC
Heartland-Woodridge of Fairfield OH, LLC
Holiday Nursing Center-Center TX, LLC
In Home Health, LLC
Industrial Wastes, LLC
Kensington Manor-Sarasota FL, LLC
Lexington Rehabilitation and Nursing Center-Lexington SC, LLC
Manor Care Aviation, LLC
Manor Care Insurance Inc.
Manor Care- Lely Palms of Naples Fl (Sh), LLC
Manor Care Nursing Center of Sarasota FL, LLC
Manor Care of Aberdeen SD, LLC
Manor Care of Akron OH, LLC
Manor Care of Alexandria VA, LLC
Manor Care of Allentown PA, LLC
Manor Care of Anderson In, LLC
Manor Care of Arlington VA, LLC
Manor Care of Barberton OH, LLC
Manor Care of Bethel Park PA, LLC
Manor Care of Bethesda MD, LLC
Manor Care of Bethlehem Pa (2021), LLC
Manor Care of Bethlehem Pa (2029), LLC
Manor Care of Boca Raton FL, LLC
Manor Care of Boulder Co, LLC
Manor Care of Boynton Beach FL, LLC
Manor Care of Camp Hill PA, LLC
Manor Care of Carlisle PA, LLC
Manor Care of Cedar Rapids IA, LLC
Manor Care of Chambersburg PA, LLC
Manor Care of Cherry Hill NJ, LLC
Manor Care of Chevy Chase MD, LLC
Manor Care of Citrus Heights CA, LLC
Manor Care of Dallas TX, LLC
Manor Care of Dallastown PA, LLC
Manor Care of Davenport IA, LLC
Manor Care of Delaware County, LLC
Manor Care of Delray Beach FL, LLC
Manor Care of Denver Co, LLC
Manor Care of Dubuque IA, LLC
Manor Care of Dunedin FL, LLC

Manor Care of Easton PA, LLC
Manor Care of Elgin IL, LLC
Manor Care of Elizabethtown PA, LLC
Manor Care of Elk Grove Village IL, LLC
Manor Care of Fargo ND, LLC
Manor Care of Florissant Mo, LLC
Manor Care of Fond Du Lac WI, LLC
Manor Care of Fort Worth TX (NRH), LLC
Manor Care of Fort Worth TX (NW), LLC
Manor Care of Fountain Valley CA, LLC
Manor Care of Ft. Myers FL, LLC
Manor Care of Gig Harbor WA, LLC
Manor Care of Green Bay WI (East), LLC
Manor Care of Green Bay WI (West), LLC
Manor Care of Hemet CA, LLC
Manor Care of Hinsdale IL, LLC
Manor Care of Homewood IL, LLC
Manor Care of Huntingdon Valley PA, LLC
Manor Care of Indy (South) In, LLC
Manor Care of Jersey Shore PA, LLC
Manor Care of Kankakee IL, LLC
Manor Care of King of Prussia PA, LLC
Manor Care of Kingsford MI, LLC
Manor Care of Kingston PA, LLC
Manor Care of Lacey WA, LLC
Manor Care of Lancaster PA, LLC
Manor Care of Laureldale PA, LLC
Manor Care of Lebanon PA, LLC
Manor Care of Libertyville IL, LLC
Manor Care of Lynnwood WA, LLC
Manor Care of Marietta Ga, LLC
Manor Care of Mayfield Heights OH, LLC
Manor Care of Mcmurray PA, LLC
Manor Care of Midwest City Ok, LLC
Manor Care of Minot ND, LLC
Manor Care of Monroeville PA, LLC
Manor Care of Mountainside NJ, LLC
Manor Care of Naperville IL, LLC
Manor Care of Naples FL, LLC
Manor Care of New Providence NJ, LLC
Manor Care of North Olmsted OH, LLC
Manor Care of Northbrook IL, LLC
Manor Care of Oak Lawn (East) IL, LLC
Manor Care of Oak Lawn (West) IL, LLC
Manor Care of Oklahoma City (Northwest), LLC
Manor Care of Oklahoma City (Southwest), LLC
Manor Care of Overland Park KS, LLC
Manor Care of Palm Desert CA, LLC
Manor Care of Palm Harbor FL, LLC
Manor Care of Palos Heights (West) IL, LLC
Manor Care of Palos Heights IL, LLC
Manor Care of Parma OH, LLC
Manor Care of Pinehurst NC, LLC
Manor Care of Plantation FL, LLC
Manor Care of Potomac MD, LLC
Manor Care of Pottstown PA, LLC

Manor Care of Pottsville PA, LLC
Manor Care of Reno NV, LLC
Manor Care of Rolling Meadows IL, LLC
Manor Care of Salmon Creek WA, LLC
Manor Care of San Antonio (North) TX, LLC
Manor Care of Shawano WI, LLC
Manor Care of Silver Spring MD, LLC
Manor Care of Sinking Spring PA, LLC
Manor Care of South Holland IL, LLC
Manor Care of South Ogden UT, LLC
Manor Care of Spokane WA, LLC
Manor Care of Springfield Mo, LLC
Manor Care of Sunbury PA, LLC
Manor Care of Sunnyvale CA, LLC
Manor Care of Tacoma WA, LLC
Manor Care of Topeka Ks, LLC
Manor Care of Towson, LLC
Manor Care of Tucson AZ, LLC
Manor Care of Tulsa Ok, LLC
Manor Care of Venice FL, LLC
Manor Care of Voorhees NJ, LLC
Manor Care of W. Palm Beach FL, LLC
Manor Care of Walnut Creek CA, LLC
Manor Care of Waterloo IA, LLC
Manor Care of Webster TX, LLC
Manor Care of West Des Moines IA, LLC
Manor Care of West Reading PA, LLC
Manor Care of Westerville OH, LLC
Manor Care of Westmont IL, LLC
Manor Care of Wheaton MD, LLC
Manor Care of Wichita Ks, LLC
Manor Care of Williamsport Pa (North), LLC
Manor Care of Williamsport Pa (South), LLC
Manor Care of Willoughby OH, LLC
Manor Care of Wilmette IL, LLC
Manor Care of Wilmington De, LLC
Manor Care of Winter Park FL, LLC
Manor Care of Yardley PA, LLC
Manor Care of Yeadon PA, LLC
Manor Care of York Pa (North), LLC
Manor Care of York Pa (South), LLC
Manor Care Rehabilitation Center of Decatur Ga,
    LLC
Manor Care Supply, LLC
Manor Care, Inc.
Manor Care-Belden Village of Canton OH, LLC
Manor Care-Carrollwood of Tampa FL, LLC
Manor Care-Dulaney MD, LLC
Manor Care-Euclid Beach of Cleveland OH, LLC
Manor Care-Fair Oaks of Fairfax VA, LLC
Manor Care-Greentree of Pittsburgh PA, LLC
Manor Care-Imperial of Richmond VA, LLC
Manor Care-Kingston Court of York PA, LLC
Manor Care-Lansdale of Montgomeryville PA, LLC
Manor Care-Largo MD, LLC
Manor Care-Linden Village of Lebanon PA, LLC

Manor Care-North Hills of Pittsburgh PA, LLC
Manor Care-Pike Creek of Wilmington De, LLC
Manor Care-Rocky River of Cleveland OH, LLC
Manor Care-Roland Park MD, LLC
Manor Care-Rossville MD, LLC
Manor Care-Ruxton MD, LLC
Manor Care-Sharpview of Houston TX, LLC
Manor Care-Stratford Hall of Richmond VA, LLC
Manor Care-Summer Trace of Carmel In, LLC
Manor Care-Tice Valley CA, LLC
Manor Care-West Deptford of Paulsboro NJ, LLC
Manor Care-Woodbridge Valley MD, LLC
ManorCare Health Services of Oklahoma, LLC
ManorCare Health Services of Toledo OH, LLC
ManorCare Health Services, LLC
Medical Care Center-Lynchburg VA, LLC
Mercy/Manor Partnership
Milestone Healthcare, LLC
Norman Specialty Hospital, LLC
Oakmont East-Greenville SC, LLC
Oakmont of Union SC, LLC
Oakmont West-Greenville SC, LLC
Ohio Employees Health Partnership, Ltd
Old Orchard Health Care Center-Easton PA, LLC
Perrysburg Commons Senior Housing-Perrysburg
    OH, LLC
Pleasant Valley Apts Ltd.
Portfolio One, LLC
Ravenswood Station, Ltd.
Rehabilitation Administration, LLC
Shadyside Nursing and Rehabilitation Center-
    Pittsburgh PA, LLC
Sky Vue Terrace-Pittsburgh PA, LLC
Springhouse of Bethesda MD, LLC
Springhouse of Pikesville MD, LLC
Springhouse of Silver Spring MD, LLC
Sun Pharmacy, LLC
Twinbrook Medical Center-Erie PA, LLC
Wallingford Nursing and Rehabilitation Center-
    Wallingford PA, LLC
West Ashley Rehabilitation and Nursing Center-
    Charleston SC, LLC
Whitehall Borough-Pittsburgh PA, LLC
Winter Park Nursing Center, LLC

**Landlords**

HCP I-B Properties, LLC
HCP Maryland Properties, LLC
HCP Properties of Alexandria VA, LLC
HCP Properties of Arlington VA, LLC
HCP Properties of Midwest City OK, LLC
HCP Properties of Oklahoma City (Northwest), LLC
HCP Properties of Oklahoma City (Southwest), LLC
HCP Properties of Tulsa OK, LLC
HCP Properties, LP

HCP Properties-Arden Courts of Annandale VA,
    LLC
HCP Properties-Charleston of Hanahan SC, LLC
HCP Properties-Columbia SC, LLC
HCP Properties-Fair Oaks of Fairfax VA, LLC
HCP Properties-Imperial of Richmond VA, LLC
HCP Properties-Medical Care Center-Lynchburg VA,
    LLC
HCP Properties-Oakmont East-Greenville SC, LLC
HCP Properties-Oakmont of Union SC, LLC
HCP Properties-Oakmont West-Greenville SC, LLC
HCP Properties-Stratford Hall of Richmond VA,
    LLC
HCP Properties-West Ashley-Charleston SC, LLC
HCP Properties-Salmon Creek WA, LLC
HCP Properties-Utica Ridge IA, LLC
HCP Properties-Wingfield Hills NV, LLC
HCP Schoenherr-Road Property, LLC
HCP Sterling Heights MI Property, LLC
HCP Twinsburg OH Property, LLC
HCP West Virginia Properties, LLC
Quality Care Properties, Inc.

**Debtor Professionals**

AP Services LLC (AlixPartners)
Epiq Bankruptcy Solutions
Moelis & Company LLC
Sidley Austin LLP
Young Conaway Stargatt & Taylor, LLP

**Quality Care Properties Professionals**

Alvarez & Marsal North America, LLC
Arent Fox LLP
Dechert LLP
Ernst & Young
Houlihan Lokey Capital, Inc.
Lazard Frères & Co., LLC
Marsh Risk Consultants
Paul, Weiss, Rifkind, Wharton & Garrison LLP
Simione Healthcare Consultants
Sullivan & Cromwell LLP

**Other Case Professionals**

Latham & Watkins, LLP

**Other Potential Parties in Interest**

HCP, Inc.

**Ordinary Course Professionals**

Anspach, Meeks & Ellenberger, LLP
Aon Consulting, Inc.

Baker & Hostetler LLP
Bleeke Dillon Crandall, PC
Boehl, Stopher & Graves
Bowles Rice
Buchanan, Ingersoll & Rooney
Buckingham, Doolittle & Burroughs
Burns, White
Cole, Scott & Kissane
Cozen & O'Connor
Deacon, Moulds & Smith
Gust Rosenfeld, PLC
Hall Booth Smith
Hood Law Firm
Kirk & Chaney
Lowis & Gellen
McVey & Parsky
Petrullo, LLP
Reed Smith LLP
Reminger Co.

#### Bankruptcy Judges for the District of Delaware

Brendan L. Shannon
Christopher S. Sontchi
Kevin Gross
Kevin J. Carey
Laurie Selber Silverstein
Mary F. Walrath

#### Banks

Huntington National Bank

#### Greater than 5% Equity Holders

Carlyle Partners V MC, L.P.
Carlyle MC Partners, L.P.
MC Operations Investments, Inc.
Ormond, Paul A.

#### Largest Unsecured Creditors

Quality Care Properties, Inc.
David Howard, Individually and on behalf of the
    Wrongful Death Beneficiaries of Donald Lee
    Howard
Joseph Grasso, Executor of the Estate of Mary
    Grasso, Joseph Grasso, individually, William
    Grasso, individually
Clara J. Columbus, as Next of Kin of Richard E.
    Columbus, Deceased and on Behalf of all
    Wrongful Death Survivors of the Decedent
Lorraine F. Brosius, as Executrix for The Estate of
    William B. Brosius, deceased
Eugene T. Adkins by and through Glen J. Adkins,
    attorney-in-fact

Marika Delgado, Personal Representative of the
    Estate of Sandra Shaw, on behalf of the Estate of
    Sandra Shaw, deceased; and Marika Delgado,
    Personal Representative, for and on behalf of
    Sandra Shaw's statutory beneficiaries and/or
    Estate pursuant to A.R. S. section 12-612(A)
Kimberly Kallas
Douglas McCalister, as Administrator for the Estate
    of Donald E. McCalister
Ronald A. Samsel and Richard J. Samsel, as Co-
    Administrators of the Estate of Mary A. Samsel,
    deceased
Jeffrey Stone, as administrator of the estate of Rachel
    Stone, deceased
The Estate of Bryan L. Slattery by and through EM
    Micki Slattery, Personal Representative
Margaret Ann Haney, as Executrix for the Estate of
    Lillian J. Kuntz, deceased
Kecia L. Johnson, as Administrator of the Estate of
    William Henry Johnson, Jr., deceased
John M. Starr, as Administrator of the Estate of
    Catherine J. Starr, Deceased
Norman J. Brinton, by and through his Attorney-in-
    Fact, Joan D. Brinton
Lorraine L. Davis, Executrix of the Estate of John L.
    Hudson
Sandra L. Stutzman, by and through her Attorney-in-
    Fact, Ann R. Russell
The Estate of Aida J. Peon, by and through Mary
    Ann Torrens, personal representative
The Estate of Arthur Hoddick, by and through
    Andrew B. Hoddick, PR
Bridget M. Whitley, Administrator Pendente Lite for
    the Estate of Richard M. McVey, deceased
Walter W. Jackson, as PR of the Estate of Phyllis W.
    Jackson, deceased
Colleen Bennett, as Independent Administrator of the
    Estate of Mary Parejko, deceased
Keesha Lane, as Administratrix of the Estate of
    Bobby Lane, Sr.
Judy Wolf-Bolton, Administratrix of the Estate of
    Lynn Wolff
Sheila J. Dillard, Attorney-in-Fact for Dorothy J.
    Winkfield
Neil F. Braun, as Executor for the Estate of Kathleen
    M. Braun
Dora McGill, as Executor for the Estate of James
    McGill
Barbara L. Clauser, Attorney-in Fact for Willard F.
    Gower
Carol A. Rennick, Attorney-in-Fact for Joanna
    Dronick

#### Governmental Regulatory and Taxing Authorities

Accreditation Commission for Health Care

Centers for Medicare & Medicaid Services
Internal Revenue Service
Ohio Department of Taxation
State of Arizona
State of Delaware
U.S. Department of Justice
United States Treasury

City of Birmingham Retirement and Relief System
Kelley, Arland
Public Employees' Retirement System of Mississippi
Societe Generale Securities Services GmbH
Stearns, Harry
Subodh, Munjal
Weldon, Scott

### Insurance Carriers

AIG – Ins. Co. of the State of PA
Allied World Assurance Co.
Arch Insurance Co.
Axis Insurance Co.
Berkley Regional Insurance Co.
Chubb Custom
First Mercury Insurance Company
General Security
Lexington Insurance Company
Liberty Mutual Insurance Co.
Lloyds of London
Manor Care Insurance, Inc.
National Union Fire Ins. Co. of Pittsburgh
National Union Fire Ins. Co. PA
Safety National Casualty Corporation
Starr Surplus Lines
Westport Insurance Corp.

### Office of the United States Trustee for the District of Delaware

Attix, Lauren
Buchbinder, David
Casey, Linda
Dice, Holly
Dortch, Shakima L.
Fox, Jr., Timothy J.
Giordano, Diane
Green, Christine
Hackman, Benjamin
Heck, Jeffrey
Keilson, Brya
Kenney, Mark
Leamy, Jane
McCollum, Hannah M.
O'Malley, James R.
Panacio, Michael
Sarkessian, Juliet
Schepacarter, Richard
Serrano, Edith A.
Starr, Karen
Tinker, T. Patrick
Vinson, Ramona
West, Michael
Wynn, Dion

### Lenders to Non-Debtor Affiliates

RD Credit, LLC (c/o Centerbridge Partners, L.P.)

### Litigants in Shareholder Derivative Actions

Bell, Mary L.
Belle, Albert J.
Boynton Beach Firefighters' Pension Fund

## **Schedule 2**

**Client Match List**

None

**Exhibit C**

**Retention Agreement**



# EPIQ SYSTEMS

## STANDARD SERVICES AGREEMENT

This Standard Services Agreement is being entered into by and between the undersigned parties, referred to herein as "Epiq" and "Client" as of the Effective Date, as defined below. In consideration of the premises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## General Terms and Conditions

**1.   Services.**

In accordance with the charges, terms and conditions contained in this agreement and in the schedule(s) attached hereto (collectively, the "Agreement"), Epiq agrees to furnish Client with the services set forth on The Services Schedule hereto (the "Services") in connection with a corporate restructuring. Services will be provided on an as needed basis and upon request or agreement of Client. Charges for the Services will be based on the pricing schedule provided to Client hereto (the "Pricing Schedule"). The Pricing Schedule sets forth individual unit pricing for each of the Services provided by Epiq and represents a bona fide proposal for that Service. Client may request separate Services or all of the Services reflected in the Pricing Schedule.

**2.   Term.**

This Agreement shall become effective on the date of its acceptance by both Epiq and Client; provided, however, Epiq acknowledges that Bankruptcy Court approval of its engagement may be required in order for Epiq to be engaged in a chapter 11 proceeding. The Agreement shall remain in effect until terminated: (a) by Client, on thirty (30) days' prior written notice to Epiq and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq; or (b) by Epiq, on ninety (90) days' prior written notice to Client and, to the extent Epiq has been retained by Bankruptcy Court order, entry of an order of the Bankruptcy Court discharging Epiq.

**3.   Charges.**

3.1   For the Services and materials furnished by Epiq under this Agreement, Client shall pay the fees, charges and costs set forth in the Pricing Schedule. Epiq will bill Client monthly. All invoices shall be due and payable upon receipt.

3.2   Epiq reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 2, 2018. If such



annual increases exceed 10% from the prior year's level, Epiq shall provide sixty (60) days' prior written notice to Client of such proposed increases.

3.3    Client agrees to pay Epiq for all materials necessary for performance of the Services under this Agreement (other than computer hardware and software) and any reasonable out of pocket expenses including, without limitation, transportation, long distance communications, printing, photocopying, fax, postage and related items.

3.4    Before and during the pendency of the Client's case pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Case"),  the Client shall receive a 10% courtesy discount off hourly fees on each monthly invoice until such time that such discounts total $25,000.

3.5    Client shall pay or reimburse all taxes applicable to services performed under this Agreement and, specifically, taxes based on disbursements made on behalf of Client, notwithstanding how such taxes may be designated, levied or based.  This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of Epiq.

3.6    Client shall pay to Epiq any actual charges (including fees, costs and expenses as set forth in the Pricing Schedule) related to, arising out of or resulting from any Client error or omission.  Such charges may include, without limitation, print or copy re-runs, supplies, long distance phone calls, travel expenses and overtime expenses for work chargeable at the rates set forth on the Pricing Schedule.

3.7    In the event of termination pursuant to Section 2 hereof, Client shall be liable for all amounts then accrued and/or due and owing to Epiq under the Agreement.

3.8    To the extent permitted by applicable law, Epiq shall receive a retainer in the amount of $25,000 (the "Retainer") that may be held by Epiq as security for Client's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  Epiq shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, Epiq shall return to Client any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## 4.    Confidentiality.

Client data provided to Epiq during the term of this Agreement in connection with the Services ("Client Data") shall be maintained confidentially by Epiq in the same manner and to the same level as Epiq safeguards data relating to its own business; provided, however, that if Client Data is publicly available, was already in Epiq's possession or known to it, was required to be disclosed by law, was independently developed by Epiq without use or reference to any Client Data, or was rightfully obtained by Epiq from a third party, Epiq shall bear no responsibility for public disclosure of such data.  Client agrees that Epiq shall not be liable for damages or losses of any nature whatsoever arising out of the unauthorized



acquisition or use of any Client Data or other Client materials provided to Epiq in the performance of this Agreement.

**5.   Title to Property.**

Epiq reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems and other information, including, without limitation, data processing programs, specifications, applications, processes, routines, sub-routines, procedural manuals and documentation furnished or developed by Epiq for itself or for use by Client (collectively, the "Property").  Charges paid by Client do not vest in Client any rights to the Property, it being expressly understood that the Property is made available to Client under this Agreement solely for Client's use during and in connection with each use of the Epiq equipment and services.  Client agrees not to copy or permit others to copy any of the Property.

**6.   Disposition of Data.**

6.1   Client is responsible for the accuracy of the programs and Client Data it provides or gives access to Epiq and for the output resulting from such data.  Client shall initiate and maintain backup files that would allow Client to regenerate or duplicate all programs and Client Data which Client provides or gives access to Epiq.  Client agrees, represents and warrants to Epiq that, prior to delivery of any Client Data to Epiq, it has full authority to deliver Client Data to Epiq.  Client agrees, represents and warrants to Epiq that it has obtained binding consents, permits, licenses and approvals from all necessary persons, authorities or individuals, and has complied with all applicable policies, regulations and laws, required by Client, in order to allow Epiq to use all Client Data delivered to it in connection with its Services.  Epiq shall not be liable for, and Client accepts full responsibility for, any liability or obligation with respect to Client Data prior to Epiq's receipt, including without limitation, any liability arising during the delivery of Client Data to Epiq.

6.2   Any Client Data, programs, storage media or other materials furnished by Client to Epiq in connection with this Agreement (collectively, the "Client Materials") may be retained by Epiq until the services provided pursuant to this Agreement are paid for in full, or until this Agreement is terminated with the services provided herein having been paid for in full.  Client shall remain liable for all out of pocket charges incurred by Epiq under this Agreement as a result of any Client Materials maintained by Epiq.  Epiq shall dispose of Client Materials in the manner requested by Client (except to the extent disposal may be prohibited by law).  Client agrees to pay Epiq for reasonable expenses incurred as a result of the disposition of Client Materials.  Epiq reserves the right to dispose of any Client Materials if this Agreement is terminated without Client's direction as to the return or disposal of Client Materials or Client has not paid all charges due to Epiq for a period of at least ninety (90) days; provided, however, Epiq shall provide Client with thirty (30) days' prior written notice of its intent to dispose of such data and media.

3



## 7.  **Indemnification.**

Client shall indemnify, defend and hold Epiq, its affiliates, parent, and each such entity's officers, members, directors, agents, representatives, managers, consultants and employees (each an "Indemnified Person") harmless from and against any and all losses, claims, damages, liabilities, costs (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), to which any Indemnified Person may become subject or involved in any capacity arising out of or relating to this Agreement or Epiq's rendering of services pursuant hereto, regardless of whether any of such Indemnified Persons is a party thereto, other than Losses resulting solely from Epiq's gross negligence or willful misconduct.  Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Person.  Client and Epiq shall notify the other party in writing promptly of the commencement, institution, threat, or assertion of any claim, action or proceeding of which Client is aware with respect to the services provided by Epiq under this Agreement.  Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of Client, and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to Epiq's liabilities.

## 8.  **Representations / Warranties.**

Epiq makes no representations or warranties, express or implied, including, without limitation, any implied or express warranty of merchantability, suitability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

## 9.  **Confidential On-Line Workspace**

Upon request of Client, Epiq shall be authorized to: (a) establish a confidential on-line workspace with an outside vendor in connection with the provision of its services to Client pursuant to this Agreement; and (b) with the consent of Client and/or its designees, publish documents and other information to such confidential workspace.  By publishing documents and other information to this confidential workspace in accordance with the foregoing, Epiq shall not be considered in violation of any of the provisions of this Agreement, including, but not limited to, Section 4 (Confidentiality).

## 10.  **General**

10.1  No waiver, alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

10.2  This Agreement may not be assigned by Client without the express written consent of Epiq, which consent shall not be unreasonably withheld.  The services provided under this Agreement are for the sole benefit and use of Client, and shall not be made available to any other persons.



10.3  This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.  Client and Epiq agree that any controversy or claim arising out of or relating to this Agreement or the alleged breach thereof shall be settled by mandatory, final and binding arbitration before the American Arbitration Association in New York, New York and such arbitration shall comply with and be governed by the rules of the American Arbitration Association, provided that each party may seek interim relief in court as it deems necessary to protect its confidential information and intellectual property rights.  Any arbitration award rendered pursuant to this provision shall be enforceable worldwide.

10.4  The parties hereto agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

10.5  Client will use its best efforts to cooperate with Epiq at Client's facilities if any portion of the Services requires its physical presence thereon.

10.6  In no event shall Epiq's Services constitute or contain legal advice or opinion, and neither Epiq nor its personnel shall be deemed to practice law hereunder.

10.7  Except for Client's obligation to pay fees, expenses and charges hereunder when due, neither party shall be in default or otherwise liable for any delay in or failure of its performance under this Agreement to the extent such delay or failure arises by reason of any act of God, any governmental requirement, act of terrorism, riots, epidemics, flood, strike, lock-out, industrial or transportational disturbance, fire, lack of materials, war, event of force majeure, or other acts beyond the reasonable control of a performing party.

10.8  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

10.9  All clauses and covenants in this Agreement are severable; in the event any or part of them are held invalid or unenforceable by any court, such clauses or covenants shall be valid and enforced to the fullest extent available, and this Agreement will be interpreted as if such invalid or unenforceable clauses or covenants were not contained herein.  The parties are independent contractors and, except as expressly stated herein, neither party shall have any rights, power or authority to act or create an obligation on behalf of the other party.



10.10   Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by hand delivery, overnight or certified mail, postage prepaid, and addressed as follows:

<u>If to Epiq Systems</u>:

Epiq Bankruptcy Solutions, LLC
777 Third Avenue, 12th Floor
New York, New York 10017
Attn:  Brad Scott

<u>If to Client</u>:

Patricia A. McCormick
HCR ManorCare
333 N. Summit St.
Toledo, OH 43604

<u>With a copy to</u>:

Dennis M. Twomey, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, Illinois 60603

10.11 Invoices sent to Client should be delivered to the following address:

Dan Kight
HCR ManorCare
333 N. Summit St.
Toledo, OH 43604

Email:          DKight@hcr-manorcare.com

10.12   The "Effective Date" of this Agreement is September 6, 2017.

6



IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Name:  Brad Scott
Title:    President & COO


**CLIENT**

By: _____
Name:  Daniel H. Kight
Title:    Treasurer

7



# <u>SERVICES SCHEDULE</u>

**<u>SCHEDULES/STATEMENT PREPARATION</u>**
➤ Assist the Debtors with administrative tasks in the preparation of their bankruptcy Schedules of Assets and Liabilities ("<u>Schedules</u>") and Statements of Financial Affairs ("<u>Statements</u>"), including (as needed):

- Coordinate with the Client and its advisors regarding the Schedules and Statements process, requirements, timelines and deliverables.
- Create and maintain databases for maintenance and formatting of Schedules and Statements data.
- Coordinate collection of data from Client and advisors.
- Provide data entry and quality assurance assistance regarding Schedules and Statements, including, specifically, the creation of Schedule G.

**<u>CLAIMS MANAGEMENT</u>**
➤ Maintain copies of all proofs of claim and proofs of interest filed (in hard copy and electronic form).

➤ Provide a secure on-line tool through which creditors can file proofs of claim and related documentation, eliminating costly manual intake, processing and data entry of paper claims and ensuring maximum efficiency in the claim-filing process.

➤ Create and maintain electronic databases for creditor/party in interest information provided by the debtor (e.g., creditor matrix and Schedules of Statements of Assets and Liabilities) and creditors/parties in interest (e.g., proof of claim/interests).

➤ Process all proof of claim/interest submitted.

➤ Provide access to the public for examination of copies of the proofs of claim or interest without charge during regular business hours.

➤ Maintain official claims registers, including, among other things, the following information for each proof of claim or proof of interest:

- Name and address of the claimant and any agent thereof, if the proof of claim or proof of interest was filed by an agent;
- Date received;
- Claim number assigned; and
- Asserted amount and classification of the claim.

8



➢ Create and maintain a website with general case information, key documents, claim search function, and mirror of ECF case docket.

➢ Transmit to the Clerk's office a copy of the claims registers on a monthly basis, unless requested by the Clerk's office on a more or less frequent basis or, in the alternative, make available the claims register on-line.

➢ Implement necessary security measures to ensure the completeness and integrity of the claims registers.

➢ Record all transfers of claims pursuant to Bankruptcy Rule 3001(e) and provide notice of such transfers as required by Bankruptcy Rule 3001(e).

➢ Maintain an up-to-date mailing list for all entities that have filed a proof of claim, proof of interest or notice of appearance, which list shall be available upon request of a party in interest or the Clerk's office.


**NOTICING**
➢ Prepare and serve required notices in these  Chapter 11 cases, including:

- Notice of the commencement of these Chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

- Notice of any auction sale hearing;

- Notice of the claims bar date;

- Notice of objection to claims;

- Notice of any hearings on a disclosure statement and confirmation of the plan of reorganization; and

- Other miscellaneous notices to any entities, as the debtor or the Court may deem necessary or appropriate for an orderly administration of these Chapter 11 cases.

➢ After service of a particular notice - whether by regular mail, overnight or hand delivery, email or facsimile service - file with the Clerk's office an affidavit of service that includes a copy of the notice involved, a list of persons to whom the notice was mailed and the date and manner of mailing.

➢ Update claim database to reflect undeliverable or changed addresses.



➢ Coordinate publication of certain notices in periodicals and other media.

➢ Distribute Claim Acknowledgement Cards to creditor having filed a proof of claim/interest.

## CRISIS AND COMMUNICATION MANAGEMENT

➢ Draft crisis and restructuring communications plan and provide strategy, guidance and plan implementation support.

- Media Strategy – Work with and advise Client on a media strategy that supplements existing media processes and procedures.

- Customer, Vendor and other Constituent Outreach – Create outreach strategy and develop supporting documents. Keeping this group informed every step of the way through open and honest outreach will support loyalty, engender trust, and ensure that ongoing operations continue.

- Employee Communications – Construct and support Client strategize and draft employee communications. Leverage employee relationships by keeping employees in the loop which will help maintain productivity and engender trust. In other words, the more they know, the less they will assume.

- Document Development – The communications team, in collaboration with Client and its legal, financial, and other advisors, will prepare all necessary documents such as letters, Q&A, talking points, etc. for use with media, employees, customers, vendors and other critical constituents. If Client files for Chapter 11, the news release will also parallel the legal pleading and act as the central document from which all others will be developed. The communications team will draft each of the documents and circulate them through management and the legal team for review and comments.

- Dissemination of communication materials – Client and/or the communications team will distribute communications documents/emails/etc. to all constituencies to ensure timely information flow to its employees, customers, vendors, and the like.

- Draft Ongoing Messages – The communications team will draft updated employee memos and follow-up letters to customers, vendors, etc., as Client moves through the restructuring process. Keeping constituents informed is critical to ensure that business operations are productive during the restructuring.



## BALLOTING/TABULATION
➢ Provide balloting services in connection with the solicitation process for any chapter 11 plan for which a disclosure statement has been approved by the court, including (as needed):

- Consult with Client and its counsel regarding timing issues, voting and tabulation procedures, and documents needed for the vote.

- Review of voting-related sections of the voting procedures motion, disclosure statement and ballots for procedural and timing issues.

- Assist in obtaining information regarding members of voting classes, including lists of holders of bonds from DTC and other entities (and, if needed, assist Client in requesting these listings).

- Coordinate distribution of solicitation documents.

- Respond to requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

- Respond to telephone inquiries from lenders, bondholders and nominees regarding the disclosure statement and the voting procedures.

- Receive and examine all ballots and master ballots cast by voting parties.  Date- stamp the originals of all such ballots and master ballots upon receipt.

- Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a certification for filing with the court.

Undertake such other duties as may be requested by the Client.

## CALL CENTER
➢ Provide state-of-the-art Call Center facility and services, including (as needed):

- Create frequently asked questions, call scripts, escalation procedures and call log formats.
- Record automated messaging.
- Train Call Center staff.
- Maintain and transmit call log to Client and advisors.



**MISCELLANEOUS**

➢ Provide such other claims processing, noticing and related administrative services as may be requested from time to time by the Client.

➢ Promptly comply with such further conditions and requirements as the Court may at any time prescribe.

➢ Comply with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

➢ Provide temporary employees to the Clerk's Office to process claims, as necessary.



# EPIQ SYSTEMS PRICING SCHEDULE

## CLAIM ADMINISTRATION HOURLY RATES

| Title | Rates |
|---|---|
| Clerical/Administrative Support | $25.00 – $45.00 |
| IT / Programming | $65.00 – $85.00 |
| Case Managers | $70.00 – $165.00 |
| Consultants/ Directors/Vice Presidents | $160.00 – $190.00 |
| Solicitation Consultant | $190.00 |
| Executive Vice President, Solicitation | $215.00 |
| Executives | No Charge |
| Communication Consultant | $395.00 |

## CLAIMS AND NOTICING RATES[1]

| | |
|---|---|
| Printing | $0.09 per image |
| Personalization / Labels | WAIVED |
| Envelopes | VARIES BY SIZE |
| Postage / Overnight Delivery | AT COST AT PREFFERED RATES |
| E-Mail Noticing | WAIVED |
| Fax Noticing | $0.05 per page |
| Claim Acknowledgement Letter | $0.05 per letter |
| Publication Noticing | Quoted at time of request |

## DATA MANAGEMENT RATES

| | |
|---|---|
| Data Storage, Maintenance and Security | $0.09 per record/month (waived first 3 months) |
| Electronic Imaging | $$0.08 per image; no monthly storage charge |
| Website Hosting Fee | NO CHARGE |
| CD- ROM (Mass Document Storage) | $5.00 per CD |

---

[1]    Noticing via overnight delivery after traditional overnight drop-off times (e.g., 9:00 p.m. in NYC) may result in additional print charges.



## ON-LINE CLAIM FILING SERVICES

On-Line Claim Filing                    NO CHARGE

## CALL CENTER RATES

Standard Call Center Setup              NO CHARGE

Call Center Operator                    $55 per hour
Voice Recorded Message                  $0.34 per minute

## OTHER SERVICES RATES

Custom Software, Workflow
and Review Resources                    Quoted at time of request

Depositions/Court Reporting             Quoted at time of request, bundled pricing available

eDiscovery                              Quoted at time of request, bundling pricing available

Virtual Data Room --
Confidential On-Line Workspace          Quoted at time of request

Disbursements -- Check and/or Form 1099     Quoted at time of request

Disbursements -- Record to Transfer Agent   Quoted at time of request