## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC.,[1] | Case No. 18-_____ (___) |
| Debtor. | |

## DEBTOR'S MOTION FOR ENTRY OF ORDER AUTHORIZING THE CONTINUATION OF ITS ORDINARY COURSE NON-DEBTOR AFFILIATE ARRANGEMENTS FOR THE PAYMENT OF CERTAIN PREPETITION TAX AND INSURANCE OBLIGATIONS

HCR ManorCare, Inc., the above-captioned debtor and debtor in possession (the "Debtor" and, together with its non-debtor affiliates, the "Company"), submits this motion (this "Motion"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting entry of an order (the "Proposed Order") authorizing the continuation of the Debtor's ordinary course business arrangements with certain of its non-debtor affiliates for the payment of prepetition tax and insurance obligations by and through such affiliates, as described in more detail below.  In support of this Motion, the Debtor submits the *Declaration of John R. Castellano, Chief Restructuring Officer of HCR ManorCare, Inc., in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "Castellano Declaration"), filed contemporaneously herewith and incorporated by reference.[2]  In further support of this Motion, the Debtor respectfully states as follows:

---

[1] The last four digits of the Debtor's federal tax identification number are 9231.  The mailing address for the Debtor is 333 N. Summit St., Toledo, OH 43604.

[2] All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Castellano Declaration.

## PRELIMINARY STATEMENT

1.     The Debtor is a holding company with no material assets other than its direct and indirect ownership interests in operating and non-operating subsidiaries within the Company (collectively, the "Non-Debtor Affiliates").[3]    All business operations of the Company are conducted by the Non-Debtor Affiliates.  The Non-Debtor Affiliates are not anticipated to file chapter 11 cases, and the Company expects ordinary-course operations to continue substantially uninterrupted during and after this chapter 11 case.  Accordingly, much of the customary first-day relief in a chapter 11 case is not needed here because the Debtor has no critical vendors and no utilities, and all but four current employees of the Company are employed directly by Non-Debtor Affiliates.[4]

2.     The Company has, however, identified certain prepetition tax and insurance obligations for which the Debtor may be liable under relevant contractual arrangements or theories of joint liability.  These tax and insurance obligations historically have been paid by a Non-Debtor Affiliate and recorded on the books and records of the applicable operating Non-Debtor Affiliate(s)—and not on the books and records of the Debtor—in the ordinary course. Although the Company believes it is current on all tax and insurance liabilities as of the Petition Date, the Debtor expects that certain tax and insurance obligations relating to periods prior to the Petition Date will come due during the pendency of this chapter 11 case.  The Debtor believes that the Non-Debtor Affiliates should be able to continue making such payments in the ordinary course pursuant to intercompany arrangements without express authorization from the

---

[3] The Debtor maintains one bank account in its own name, which bank account was established for the sole purpose of holding $25 million in cash to be used to pay the Debtor's administrative expenses in this chapter 11 case. *See Debtor's Motion for Entry of an Order (I) Authorizing Continued Use of Prepetition Bank Account, (II) Authorizing Continued Use of Existing Business Forms, (III) Waiving the Requirements of § 345(b) and (IV) Granting Related Relief* (the "Bank Account Motion"), filed concurrently herewith.

[4] See paragraph 17 below.

Bankruptcy Court. Nevertheless, the Debtor is seeking authority to continue the arrangements with its Non-Debtor Affiliates with respect to the payment of prepetition tax and insurance obligations that may be attributable to the Debtor out of an abundance of caution and to provide disclosure to the Court, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and other parties in interest of the nature of these payments. To be clear, the Debtor seeks the limited relief of permitting its Non-Debtor Affiliates to pay tax and insurance obligations relating to the prepetition period consistent with its current business practices, and the Debtor is not requesting authority to use any of its own cash or other assets to pay these prepetition liabilities.

## STATUS OF THE CASE AND JURISDICTION

3.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues, through its direct and indirect non-debtor subsidiaries, to operate the Company's business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

4.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant Rule 9013-1(f) of the Local Rules to the entry of a final order or judgment by the Court in connection with this Motion if it is determined that the Court,

01:22949836.1

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.     The statutory and other bases for the relief requested in this Motion are sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004.

## THE PREPACKAGED PLAN OF REORGANIZATION

7.     Concurrently with this Motion, the Debtor filed a prepackaged plan of reorganization (the "Plan") and a related disclosure statement.  The Debtor has also filed a motion seeking to schedule (i) a combined hearing for the Court to consider approval of the disclosure statement and the prepetition solicitation procedures, as well as confirmation of the Plan and (ii) related objection and other deadlines.  The only class of creditors entitled to vote on the Plan has voted unanimously in favor of confirming the Plan.

## BACKGROUND OF THE COMPANY

8.     Additional information regarding the Debtor, the Company's business segments, and the events preceding the Petition Date may be found in the Castellano Declaration.

## RELIEF REQUESTED

9.     By this Motion, the Debtor seeks entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, authorizing the continuation of the Debtor's ordinary course arrangements with its Non-Debtor Affiliates for the payment of certain prepetition tax and insurance obligations by and through such Non-Debtor Affiliates.  As noted above and set forth in detail below, and consistent with prepetition practice, the payment of these prepetition liabilities by the Non-Debtor Affiliates will neither affect the Debtor's available cash nor be

01:22949836.1

allocated as an expense or liability of the Debtor on the Debtor's books and records, and therefore should not implicate the Debtor's estate.

## CASH MANAGEMENT SYSTEM AND INTERCOMPANY ARRANGEMENTS

10.    In the ordinary course of business, the Non-Debtor Affiliate HCR Manor Care Services, LLC ("HCR Services") operates the centralized cash management system (the "Cash Management System") for the benefit of all operating affiliates within the Company.  As the administrator of the Cash Management System, HCR Services is responsible for (a) monitoring and processing substantially all treasury functions, (b) ensuring that the revenues, disbursements and expenses of each operating affiliate within the Company are attributed to the appropriate business unit, (c) properly allocating and disbursing funds to third parties in furtherance of the Company's operations, and (d) with the assistance of its non-debtor affiliate Heartland Employment Services, LLC ("HES"), ensuring that wages and benefits are paid and provided to the Company's employees in a timely manner.  Pursuant to the Cash Management System, HCR Services monitors and processes substantially all receipts and disbursements for the Non-Debtor Providers through a series of bank accounts in the name of HCR Services, HES, and HCR III Healthcare, LLC.  At all times, HCR Services maintains strict accounting controls in order to properly identify cash generated by and costs incurred by each business unit within the Company.

11.    As a non-operating entity, the Debtor does not independently generate cash nor incur operating liabilities, and, accordingly, no expenses are allocated to the Debtor through the Cash Management System.  All of the Debtor's prepetition obligations have historically been paid by HCR Services (or another Non-Debtor Affiliate) and allocated as expenses of operating Non-Debtor Affiliates through the Cash Management System.  As set forth in more detail in the

Bank Account Motion, the Debtor's only bank account was opened shortly before the Petition Date, is maintained outside the Cash Management System, and will only be used to pay administrative expenses incurred by the Debtor in this chapter 11 case. As such, there is no possibility that Debtor and non-Debtor funds will be commingled.

15.     HCR Service's role as administrator of all treasury and financing functions on behalf of the Debtor and Non-Debtor Affiliates of the Company is memorialized, as is customary in a large organization similar to the Company, through a series of substantially identical administrative support services agreements between HCR Services and each of the Debtor and Non-Debtor Affiliates (collectively, the "<u>Administrative Support Services Agreement</u>"). In exchange for the services provided under the Administrative Support Services Agreement, each affiliate has agreed to pay HCR Services a monthly service fee (the "<u>Service Fee</u>"), equal to a percentage of such entity's annual net revenue for the applicable calendar year. Because the Debtor has no direct operations, the Debtor does not pay any Service Fee to HCR Services.

16.     In addition to the Administrative Support Services Agreement, non-debtor Manor Care, Inc. ("<u>Manor Care</u>") and certain other Company affiliates – other than the Debtor – are parties to the Intercompany Loan Agreement, pursuant to which intercompany transactions are accounted for as a payable or receivable against HCR Services, and are reflected in each affiliate's books and records as a payable or receivable solely against HCR Services. Manor Care acts as a guarantor of all the intercompany transactions under the Intercompany Loan Agreement.

17.     Employee wages and benefits are also paid through an intercompany arrangement involving the Cash Management System. While substantially all of the Company's 50,000 employees are "co-employed" by non-debtor HES and an operating Non-Debtor Affiliate within

the Company (in accordance with a series of substantially identical Professional Employer Agreements (the "Employer Services Agreements") between the operating affiliate and HES), there are four current members[5] and one former member of the Company's senior management (collectively, the "Debtor Executives") that are parties to employment agreements with the Debtor.  Pursuant to each employee agreement, these Debtor Executives may be paid directly by the Debtor or a Non-Debtor Affiliate.  Consistent with the practices employed for all of the Company's other employees, these Debtor Executives are also paid by HES in the ordinary course of business.[6]  In addition, all benefits for the Company's employees, including the Debtor Executives, are administered by HES or by HCR Services on behalf of HES.  The Debtor is not charged, and does not reimburse HES, for any wages or benefits paid to the Debtor Executives.

18.    As a result of the Cash Management System and the other intercompany arrangements described above, in the ordinary course of the Company's operations, the liabilities that may be asserted against the Debtor are paid directly by a Non-Debtor, and allocated for accounting purposes to operating Non-Debtor Affiliates.

## PREPETITION TAX AND INSURANCE OBLIGATIONS

19.    The prepetition tax and insurance-related obligations that may be asserted against the Debtor and that will become due and payable during the pendency of the chapter 11 case are described in more detail below:

### A.    Prepetition Taxes

20.    In the ordinary course of business, the Company collects and incurs certain taxes, including sales and use, franchise, property, income, and other taxes (collectively, the "Taxes").

---

[5] The four current members of senior management are the Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, and General Counsel of the Company.

[6] As of the Petition Date, the Debtor Executives were not owed any outstanding wages by the Debtor or HES.  HES will continue to pay the wages the Debtor Executives earn post-petition in the ordinary course.

The Taxes are payable directly to various foreign, federal, state, and local taxing authorities (the "Taxing Authorities"), and HCR Services, as the administrator on behalf of all Company affiliates, remits such Taxes to the applicable Taxing Authorities.[7]  The Company files U.S. federal corporate income taxes, Arizona state income taxes, Delaware franchise taxes, and Ohio commercial activity taxes under the Debtor's tax identification number (collectively, the "Debtor-ID Taxes").  While the Debtor nominally has liability for such Debtor-ID Taxes, the Debtor-ID Taxes, like the other Taxes, are paid by HCR Services on behalf of all Company affiliates and allocated to either HCR Services itself, or operating subsidiaries pursuant to the Administrative Support Services Agreement.

21.    Although the Debtor believes that the Company is current on all of the Debtor-ID Taxes that were due as of the Petition Date, the Debtor requests authority to continue to permit HCR Services to pay all Debtor-ID Taxes relating to periods prior to the Petition Date that may come due during the pendency of this chapter 11 case (the "Prepetition Taxes").  The Debtor estimates that approximately $500,000 in Prepetition Taxes will be due during the pendency of this chapter 11 case.

### B.    Prepetition Insurance Obligations

22.    The Company is able to obtain better rates for certain insurance coverage (the "Insurance Coverage") by maintaining group coverage for the benefit of all affiliates in the Company.  Most of the Company's insurance policies list the Debtor as the policy holder for the group coverage, and the Debtor is the contract counterparty to the Broker Services Agreement with Hylant Group, Inc., the Company's insurance broker.  These insurance policies include

---

[7] HCR Services also pays, on behalf of the operating subsidiaries certain applicable license fees, state assessments, Medicare and Medicaid settlements, and other fees and charges relating to the operation of skilled nursing facilities, assisted living facilities, outpatient rehabilitation clinics and other healthcare services (the "Licenses & Fees").  However, the Debtor is not contractually or otherwise liable for such Licenses & Fees, and thus will be paid by Non-Debtor Affiliates in the ordinary course.

general and healthcare professional liability coverage, workers' compensation and employers' liability coverage, and excess liability coverage.  HCR Services, as the administrator on behalf of all Company affiliates, pays all premiums and broker fees for Insurance Coverage on behalf of all covered Company entities.  The costs associated with Insurance Coverage premiums and broker fees are apportioned among the Debtor's Non-Debtor Affiliates in accordance with the Administrative Support Services Agreement, based on such affiliate's annual revenue.  As of the Petition Date, there are no costs associated with Insurance Coverage apportioned to the Debtor.

23.     Although the Debtor believes that the Company is current on all of its obligations relating to Insurance Coverage that were due as of the Petition Date, the Debtor requests authority to continue to permit HCR Services to pay any prepetition obligations relating to Insurance Coverage that may come due during the pendency of this chapter 11 case, regardless of whether such obligations come due under an existing, extended or new insurance policy (the "Prepetition Insurance Obligations").  The Debtor estimates that up to $50,000 in Prepetition Insurance Obligations may be due during the pendency of the chapter 11 case.

**BASIS FOR RELIEF**

24.     The Debtor believes that the payment of the Prepetition Taxes and Prepetition Insurance Obligations (together, the "Prepetition Obligations") by a Non-Debtor Affiliate is outside of the purview of this chapter 11 case because the Debtor's estate assets will not be used to pay such claims and the Debtor will not be charged with any liability for such claims, consistent with the historical practices of the Company, the operation of the Cash Management System, and intercompany arrangements used in the ordinary course of the Company's businesses.  The Plan, moreover, provides that all administrative, priority, and general unsecured claims against the Debtor (other than the QCP Claims) will be unimpaired, and thus the payment

01:22949836.1

of the Prepetition Obligations is consistent with the ultimate treatment of such claims under the Plan, and only affects the timing of the payment.  However, out of an abundance of caution, in the interests of disclosure and transparency, and given the importance of these payments to the ongoing operations of the Company's businesses, the Debtor is seeking the relief requested herein pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Similar relief was recently granted by the Court in In re Orchard Acquisition Company, LLC.[8]  See *Interim and Final Orders Authorizing the Continuation of Cash Management System and Ordinary Course Business Arrangements with and Through the Debtors' Non-Debtor Affiliates, Including Continuation of and Payment for Insurance Policies, Payment of Taxes, and Related Arrangements*, In re Orchard Acquisition Company, LLC, Case No. 17-12914 (KG) (Bankr. D. Del. Dec. 13, 2017 [Dkt. No. 49] and Jan. 5, 2018 [Dkt. No. 109]) (permitting non-debtor affiliates to pay certain prepetition liabilities of the debtors in circumstances where the ultimate liability for such prepetition claims was recorded on the debtors' books and records).

25.    Under Bankruptcy Code section 363(b)(1), a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts will approve the use of estate property if it is an exercise of sound business judgment.  See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale, or lease of property of the estate under [section 363], courts require the debtor to show that a sound business purpose justifies such actions."); see also In re Phx. Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason"

---

[8] The relief granted by the Orchard Acquisition court was actually broader than the relief sought herein.  In that case, the debtors had been appropriated liability on their books and records for the obligations paid by non-debtor affiliates; whereas the Debtor here has not been, and will not be, apportioned any liability for the obligations to be paid by the Non-Debtor Affiliates.

for use under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decision (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr S.D.N.Y. 1986); see also In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").  The payment of the Prepetition Obligations is important to maintaining the continuous and smooth operation of the Company's businesses.  Moreover, the payment of the Prepetition Obligations is neutral to the Debtor's estate, as the payments will be made by a Non-Debtor Affiliate, and the payments will not be recorded as expenses of the Debtor on the Company's books and records.

26.     Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein with respect to the limited Prepetition Obligations.  See In re Lehigh & New Eng. Ry., 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); see also In re Just for Feet, Inc., 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the

standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

27.     In a long line of well-established cases, courts consistently have permitted post-petition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport, C7S W.R. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases), cert. denied 325 U.S. 873 (1945); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses and benefits).  Given the nature and limited amount of Prepetition Obligations, the fact that such Prepetition Obligations will be paid by a Non-Debtor Affiliate, and the fact that all claims against the Debtor, other than QCP Claims, will be unimpaired under the Plan, the Debtor believes the payment of the Prepetition Obligations by the Non-Debtor Affiliates should be approved under Section 105(a).

28.     The specific nature of the Prepetition Obligations sought to be paid by Non-Debtor Affiliates pursuant to this Motion provides additional support for granting the relief requested.  With respect to the Prepetition Taxes, the failure to pay such Prepetition Taxes in the ordinary course could materially disrupt the Company's business operations.  First, the Taxing Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Company's attention and resources from the Debtor's reorganization process.  Second, failure to pay state franchise or operating taxes could cause the

01:22949836.1

Debtor and its Non-Debtor Affiliates to lose their ability to operate in certain jurisdictions. In addition, unpaid Prepetition Taxes could result in penalties, the accrual of interest, and/or the assertion of secured claims by the Taxing Authorities, all of which could negatively impact the Debtor's estate.

29.    Finally, under the Bankruptcy Code, claims of the Taxing Authorities for certain of the Prepetition Taxes are or may be deemed priority claims entitled to payment before general unsecured claims.  See 11 U.S.C. § 507(a)(8) (enumerating certain taxes entitled to priority treatment).  The Court also cannot confirm a plan of reorganization unless it provides for payment of priority tax claims.  See 11 U.S.C. § 1129(a)(9)(C) (requiring a plan of reorganization to grant payment of the total value of the allowed amount of any claim specified in section 507(a)(8)).  Indeed, the Plan leaves priority tax claims and general unsecured claims unimpaired and provides that such claims will be paid in the ordinary course. Therefore, the payment of the Prepetition Taxes when they become due would only affect the timing of the payment of these amounts, and would not prejudice the rights and recoveries of other general creditors, whose claims are unimpaired under the Plan.

30.    For the reasons set forth above, courts in this jurisdiction typically have authorized payment of prepetition taxes under section 363(b) of the Bankruptcy Code.  See, e.g., In re Maurice Sporting Goods, Inc., No. 17-12481 (CSS) (Bankr. D. Del. Nov. 21, 2017) (authorizing debtors to pay prepetition taxes and fees in the ordinary course of business); In re Real Industry, Inc., No. 17-12464 (KJC) (Bankr. D. Del. Nov. 20, 2017) (same); In re Aerogroup Int'l., No. 17-11962 (KJC) (Bankr. D. Del. Oct. 16, 2017) (same); In re Vitamin World, Inc., No. 17-11933 (KJC) (Bankr. D. Del. Oct. 6, 2017) (same).

31.     With respect to the Prepetition Insurance Obligations, section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the Insurance Coverage is required by the regulations, laws, and contracts that govern the Debtor's commercial activities, including the operating guidelines issued by the U.S. Trustee (the "Operating Guidelines").  Given this backdrop, the Debtor believes it is essential to its estate, and consistent with the Bankruptcy Code and the Operating Guidelines, that it maintains and continues to cause all payments required under its Insurance Coverage to be made by its Non-Debtor Affiliates in the ordinary course.

32.     Payment of the Prepetition Insurance Obligations is therefore warranted under section 363(b) and the necessity of payment doctrine.  Continuation of the Insurance Coverage is essential to continued operations and preserving the value of the Debtor's estate and the Company's ongoing business.  Courts in this district routinely grant similar relief.  See, e.g., In re Maurice Sporting Goods, Inc., No. 17-12481 (CSS) (Bankr. D. Del. Nov. 21, 2017 (authorizing debtors to pay prepetition premiums and enter into new insurance policies in the ordinary course); In re Real Industry, Inc., No. 17-12464 (KJC) (Bankr. D. Del. Nov. 20, 2017) (same); In re Aerogroup Int'l., No. 17-11962 (KJC) (Bankr. D. Del. Oct. 16, 2017) (same); In re Vitamin World, Inc., No. 17-11933 (KJC) (Bankr. D. Del. Oct. 6, 2017) (same).

33.     Accordingly, the Debtor submits there is ample support to grant the relief requested in this Motion and authorize the Debtor to continue its ordinary course business arrangements with Non-Debtor Affiliates for the payment of the Prepetition Obligations.

01:22949836.1

## WAIVER OF BANKRUPTCY RULE 6004(h)

34.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The Debtor submits that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies, given that the payment of the Prepetition Obligations will be made by Non-Debtor Affiliates and will not diminish the property of the Debtor's estate, and that timely payment of the Prepetition Obligations is necessary for the ongoing operations of the Company.

## RESERVATION OF RIGHTS

35.     Nothing contained herein is intended, nor should be construed as, (i) an admission as to the validity or priority of any claim against the Debtor or any Non-Debtor Affiliate, (ii) a wavier of the Debtor's or any Non-Debtor Affiliate's rights to object to or dispute any claim or its priority, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  The Debtor expressly reserves its right, and the right of the Non-Debtor Affiliates, to contest any claim (or the priority of any claim) related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, and should not be construed as, an admission as to the validity or priority of any claim or a waiver of the Debtor's or any Non-Debtor Affiliate's rights to subsequently dispute such claim or priority.

## NOTICE

36.    Notice of this Motion will be provided to (i) the U.S. Trustee, (ii) the holders of the thirty (30) largest unsecured claims against the Debtor; (iii) counsel to Quality Care Properties, Inc.; (iv) counsel to the administrative agent under the Company's prepetition credit facility; (v) counsel to The Carlyle Group; (vi) the U.S. Attorney's Office for the District of Delaware; (vii) the Internal Revenue Service; (viii) the U.S. Department of Justice; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

01:22949836.1

WHEREFORE, the Debtor respectfully request entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  March 4, 2018          SIDLEY AUSTIN LLP
Wilmington, Delaware          Larry J. Nyhan
                              Dennis M. Twomey
                              William A. Evanoff
                              Allison Ross Stromberg
                              Matthew E. Linder
                              One South Dearborn Street
                              Chicago, Illinois 60603
                              Telephone:  (312) 853-7000
                              Facsimile:  (312) 853-7036

                                    -and-

                              YOUNG CONAWAY STARGATT & TAYLOR, LLP

                              */s/ Edmon L. Morton*
                              Robert S. Brady (No. 2847)
                              Edmon L. Morton (No. 3856)
                              Justin H. Rucki (No. 5304)
                              Tara C. Pakrouh (No. 6192)
                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware 19801
                              Telephone:  (302) 571-6600
                              Facsimile:  (302) 571-1253

                              PROPOSED ATTORNEYS FOR THE DEBTOR AND
                              DEBTOR IN POSSESSION

01:22949836.1

**<u>Exhibit A</u>**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC.,[1] | Case No. 18-_____ (___) |
| Debtor. | **Ref. Docket No. _____** |

### ORDER AUTHORIZING THE CONTINUATION OF THE DEBTOR'S ORDINARY COURSE NON-DEBTOR AFFILIATE ARRANGEMENTS FOR THE PAYMENT OF CERTAIN PREPETITION TAXES AND INSURANCE OBLIGATIONS

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor in possession (the "Debtor", and, together with its non-debtor affiliates, the "Company") for the entry of an order (this "Order") authorizing the continuation of the Debtor's ordinary course business arrangements with its non-debtor affiliates (the "Non-Debtor Affiliates") for the payment of certain prepetition tax and insurance obligations by and through the Non-Debtor Affiliates; and upon consideration of the Castellano Declaration; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice of and the opportunity for a hearing on the Motion having been given; and the relief requested in the Motion being in the best interests of the Debtor's estate, its creditors and other parties in interest; and the Court having determined that the legal and factual

---

[1] The last four digits of the Debtor's federal tax identification number are 9231. The mailing address for the Debtor is 333 N. Summit St., Toledo, OH 43604.

[2] Capitalized terms used but not defined in herein shall have the meanings ascribed to such terms in the Motion.

01:22949836.1

bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.        The relief requested in the Motion is GRANTED as set forth herein.

2.        The Non-Debtor Affiliates are authorized to pay the Prepetition Taxes in the ordinary course when such Prepetition Taxes are due without further notice to, authorization by or approval of the Court.

3.        The Non-Debtor Affiliates are authorized to pay the Prepetition Insurance Obligations in the ordinary course when such Prepetition Insurance Obligations are due without further notice to, authorization by or approval of the Court.

4.        The Debtor is authorized to continue utilizing the Administrative Support Services Agreement on the terms described in the Motion.

5.        Nothing contained in this Order or in the Motion is intended to be or shall be construed as (a) an admission as to the validity or priority of any claim against the Debtor or any Non-Debtor Affiliate, (b) a waiver of the Debtor's, any Non-Debtor Affiliate's, or any appropriate party in interest's rights to dispute any claim or its priority, or (c) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise any payment made pursuant to this Order is not intended to be and shall not be construed as an admission as to the validity or priority of any claim or a waiver of the Debtor's or any Non-Debtor Affiliate's rights to subsequently dispute such claim or priority.

6.        Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.        The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

01:22949836.1

8.      The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2018
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

01:22949836.1

3