## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HCR MANORCARE, INC.,[1] | Case No. 18-10467 (KG) |
| Debtor. | **Ref. Docket No. 9** |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363,
507 AND 552 AND BANKRUPTCY RULES 2002, 4001, 6004
AND 9014 (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED
PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING
A FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion"),[2] of HCR ManorCare, Inc., the above-captioned debtor

and debtor in possession (the "Debtor"), for entry of an interim order (this "Interim Order"),

under sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002,

4001 and 9014, and Local Rules 2002-1, 4001-2 and 9013-1, seeking, among other things:

(a) authorization for the Debtor to, (i) pursuant to sections 105, 361, 362, 363, 507 and 552 of the Bankruptcy Code, use Cash Collateral (as defined in paragraph E(c) below) and all other Prepetition Collateral (as defined in paragraph E(b)(iii) below), of the Prepetition Secured Parties (as defined in paragraph E(b)(i) below), and (ii) provide adequate protection on the terms set forth in this Interim Order to the Prepetition Secured Parties;

(b) authorization for the Debtor to provide adequate protection to the Prepetition Secured Parties pursuant to sections 361 and 363(e) of the Bankruptcy Code;

(c) upon entry of the Final Order, authorization for the Debtor to grant Adequate Protection Claims (as defined below) to the Prepetition Secured Parties on the proceeds and property recovered in respect of the Debtor's claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions"), in each case as identified pursuant to Local Rule 4001-2(a)(i)(D);

---

[1]   The last four digits of the Debtor's federal tax identification number are 9231.  The Debtor's mailing address is 333 N. Summit St., Toledo, OH 43604.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(d) authorization for the Debtor to grant Adequate Protection Liens (as defined below) to the Prepetition Secured Parties as security for the Adequate Protection Obligations.

(e) except to the extent of the Carve Out (as defined in paragraph 8 below), upon entry of the Final Order, authorization for the Debtor's waiver of any right to surcharge any Prepetition Collateral or Adequate Protection Collateral (as defined in paragraph 4(c) below) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(f) modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(g) a waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(h) to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing the Debtors to use Cash Collateral on a final basis and authorizing and approving the relief requested in the Motion to become effective pursuant to a Final Order.

Upon the record made by the Debtor at the hearing held by this Court on March 6, 2018 (the "Interim Hearing") (including, without limitation, the Motion and the First Day Declaration); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court being able to enter this Interim Order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the granting of the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Interim Hearing; and this Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the

relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>.  On March 4, 2018 (the "<u>Petition Date</u>"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") commencing the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>").

B.    <u>Jurisdiction and Venue</u>.  The Court has core jurisdiction over the Chapter 11 Case, the Motion and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Venue of the Chapter 11 Case and proceedings on the Motion is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  No trustee or examiner has been appointed in the Chapter 11 Case.

C.    <u>Committee Formation</u>.  As of the date hereof, no statutory committee of unsecured creditors (such committee, a "<u>Creditors' Committee</u>") has been appointed in the Chapter 11 Case.

D.    <u>Notice</u>.  Pursuant to Bankruptcy Rules 2002, 4001(b) and (d), and 9006, as required by sections 361 and 363 of the Bankruptcy Code and Local Rule 4001-2, sufficient and adequate notice of the Motion, as it pertains to entry of this Interim Order, and the Interim Hearing thereon, was provided to:  (a) counsel to the Prepetition First Lien Secured Parties, (i) Akin Gump Strauss Hauer & Feld LLP, Bank of America Tower, One Bryant Park, New York, NY 10036 (Attn:    Philip C. Dublin (pdublin@akingump.com) and Alexis Freeman

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

(afreeman@akingump.com)) and (ii) Blank Rome LLP, 1201 North Market Street, Wilmington, DE 19801 (Attn: Stanley Tarr (starr@blankrome.com)); (b) counsel to QCP, (i) Sullivan and Cromwell LLP, 125 Broad Street, New York, NY 10004 (Attn: Andrew G. Dietderich (dietdericha@sullcrom.com) and David R. Zylberberg (zylberbergd@sullcrom.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19899 (Attn: Derek C. Abbott (dabbott@mnat.com)); (c) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey, Esq.); and (d) creditors holding the thirty (30) largest unsecured claims as set forth in the list filed with the Debtor's petition. Except as provided herein with respect to notice of the Final Hearing and the Final Order, no further notice of, or hearing on, the relief sought in the Motion is necessary or required.

      E.     <u>Debtor's Stipulations</u>.  Subject in all respects to paragraph 11 of this Interim Order, the Debtor admits, stipulates, and agrees to the following (collectively, the "<u>Debtor Stipulations</u>"):

      (a)     <u>Prepetition Credit Agreement</u>.

      (i)     As of the Petition Date, non-debtor affiliate HCR Home Health Care and Hospice, LLC, as Borrower, the Debtor, as guarantor, and the non-debtor guarantors party thereto (collectively, the "<u>Guarantors</u>" and, the Borrower and Guarantors other than the Debtor, the "<u>Non-Debtor Obligors</u>"), the lenders party thereto from time to time (the "<u>Prepetition First Lien Lenders</u>"), and RD Credit, LLC (the "<u>Prepetition Agent</u>"), as administrative agent and collateral agent (together with the Prepetition First Lien Lenders, the "<u>Prepetition First Lien Secured Parties</u>") are parties to that certain Credit Agreement, dated as of July 17, 2017 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "<u>Prepetition Credit Agreement</u>" and, together with all other Loan Documents (as defined in the Prepetition Credit Agreement), the "<u>Prepetition Loan Documents</u>"), which provides for (x) a $400,000,000 term loan facility (the "<u>Prepetition Term Facility</u>") and (y) a $150,000,000 revolving credit facility (the "<u>Prepetition Revolving Facility</u>" and, together with the Prepetition Term Facility, the "<u>Prepetition Credit Facility</u>").

(ii)    As of the Petition Date, the Debtor and the Non-Debtor Obligors (collectively, the "Loan Parties") were unconditionally indebted and liable to the Prepetition First Lien Secured Parties, without objection, defense, counterclaim or offset of any kind, for all of the obligations under the Prepetition Loan Documents, in respect of loans in the outstanding principal amount of (x) $400,000,000 under the Prepetition Term Facility and (y) $150,000,000 in revolving credit loans under the Prepetition Revolving Facility, plus all accrued and unpaid interest thereon, premium, and any fees, costs, expenses, charges and all other obligations incurred in connection therewith as provided in the Prepetition Loan Documents (the "Prepetition First Lien Obligations" and the Debtor's obligations in respect thereof, the "Prepetition First Lien Debtor Obligations").

(iii)    Pursuant to the Prepetition Loan Documents, the Prepetition First Lien Obligations owed to the Prepetition First Lien Secured Parties are secured by valid, binding, perfected, first priority Liens (as defined in the Prepetition Credit Agreement) on, and security interests in, the Collateral (as defined in the Prepetition Credit Agreement) (the "Prepetition First Lien Collateral" inclusive of the Collateral of the Debtor (the "Prepetition First Lien Debtor Collateral"), and the Liens thereon and security interests therein, the "Prepetition First Liens" inclusive of such liens and security interests with respect to the Debtor (the "Prepetition Debtor First Liens")), which constitutes substantially all of the assets of the Loan Parties, in each case, and is subject to certain exclusions (including any leasehold interest in real property and any equity interests in SNF Entities (as defined in the Prepetition Credit Agreement)) as set forth in the Prepetition Loan Documents and only to the extent such Prepetition First Liens did not attach to the property purported to be subject to such exclusion.

(iv)    As of the Petition Date, and without giving effect to this Interim Order, the Debtor and other Loan Parties are not aware of any liens on or security interests in the Prepetition First Lien Collateral having priority over the Prepetition First Liens, except (x) as expressly permitted under the Prepetition Loan Documents and (y) for governmental authorities', carriers', warehousemen's, mechanics', materialmens' or other like Liens to the extent such Liens have priority over the Prepetition First Liens by operation of law or statute. The Prepetition First Liens were granted to or for the benefit of the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.

(b)    Prepetition Affiliate Note.

(i)    The Debtor executed that certain Subordinated Secured Demand Note, dated as of March 1, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Affiliate

Note"), in favor of non-debtor affiliate HCR Home Health Care and Hospice, LLC (the "Affiliate Lender" and, together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), for the payment of the principal amount of $25,000,000.

(ii)    The Prepetition Affiliate Note, as executed, is in compliance with, and subject in all respects to, the terms of the Prepetition Credit Agreement, including, but not limited to, section 7.17(iv) of the Prepetition Credit Agreement.

(iii)    As of the Petition Date, the Debtor was unconditionally indebted and liable to the Affiliate Lender, without objection, defense, counterclaim or offset of any kind, for all of the obligations under the Prepetition Affiliate Note, in respect of a loan in the outstanding principal amount of $25,000,000 plus all accrued and unpaid interest thereon, and any fees, costs, expenses, charges and all other obligations incurred in connection therewith as provided in the Prepetition Affiliate Note (the "Prepetition Affiliate Obligations" and, together with the Prepetition First Lien Debtor Obligations, the "Prepetition Obligations").

(iv)    The Prepetition Affiliate Obligations are subordinate in right of payment to the Prepetition First Lien Debtor Obligations.

(v)    Pursuant to the Prepetition Affiliate Note, the Prepetition Affiliate Obligations owed to the Affiliate Lender are secured by valid, binding, perfected, second priority liens on, and security interests in (the "Prepetition Affiliate Liens" and, together with the Prepetition Debtor First Liens, the "Prepetition Liens"), the Collateral (as defined in the Prepetition Affiliate Note), which constitutes substantially all of the assets of the Debtor (the "Prepetition Affiliate Collateral" and, together with the Prepetition First Lien Debtor Collateral, the "Prepetition Collateral"), which is subject to certain exclusions (including any leasehold interest in real property) as set forth in the Prepetition Affiliate Note and only to the extent such Prepetition Affiliate Liens did not attach to the property purported to be subject to such exclusion.

(vi)    As of the Petition Date, and without giving effect to this Interim Order, the Debtor is not aware of any liens on or security interests in the Prepetition Affiliate Collateral having priority over the Prepetition Affiliate Liens, except (x) the Prepetition Debtor First Liens, (y) as expressly permitted under the Prepetition Affiliate Note and (z) for governmental authorities', carriers', warehousemen's, mechanics', materialmens' or other like liens to the extent such liens have priority over the Prepetition Affiliate Liens by operation of law or statute. The Prepetition Affiliate Liens were granted to or for the benefit of the Affiliate Lender for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby.

(vii)    Pursuant to the Endorsement and Collateral Assignment as set forth in the Prepetition Affiliate Note (the "Affiliate Pledge"), the Affiliate Lender pledged all of its rights (including the Affiliate Lender's rights to vote on any chapter 11 plan in this Chapter 11 Case), claims and interests in and to the Prepetition Affiliate Obligations to the Prepetition Agent as collateral security for the Affiliate Lender's obligations under that certain Guarantee and Collateral Agreement dated as of July 17, 2017, entered into in connection with the Prepetition Credit Facility, for fair consideration and reasonably equivalent value.

(c)    Enforceability of Secured Financing Obligations.

(i)    The Prepetition First Lien Debtor Obligations, the Prepetition Affiliate Obligations, the Prepetition Loan Documents and the Prepetition Affiliate Note (including the Affiliate Pledge) (x) are legal, valid, binding, non-avoidable and enforceable against the Debtor and the other Loan Parties, as applicable, and (y) are not subject to contest, attack, recoupment, defense, setoff, counterclaim, avoidance, recharacterization, reclassification, reduction, disallowance, recovery, disgorgement, impairment, subordination (whether equitable, contractual, or otherwise), attachment or other "claim" (as defined by section 101(5) of the Bankruptcy Code), cause of action or other challenge of any kind under the Bankruptcy Code or applicable nonbankruptcy law (except insofar as the Prepetition Affiliate Obligations are claims and liens subordinated to the Prepetition First Lien Debtor Obligations and as such Prepetition First Lien Debtor Obligations, Prepetition Affiliate Obligations and liens in respect thereof are expressly subordinated or subject to the rights and remedies set forth in this Interim Order).

(ii)    The Debtor and its estate have no claims, objections, challenges, causes of action and/or choses in action, including, without limitation, "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state or federal law (including, without limitation, any recharacterization, subordination, avoidance, disgorgement, recovery or other claims arising under or pursuant to sections 105, 510 or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge), the Prepetition Obligations, the Prepetition Collateral or the Prepetition Liens.

(iii)    None of the Prepetition First Lien Secured Parties are control persons or insiders of the Debtor or any of its affiliates, nor shall they be deemed to owe any fiduciary duty to the Debtor, its creditors, shareholders or estate, by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge) and/or the use of Cash Collateral (as defined below).

01:22949848.4

(d)    <u>Cash Collateral</u>.

(i)    Cash of the Debtor, including, without limitation, all cash and other amounts on deposit or maintained in any account(s) by the Debtor and any amounts generated by the collection of accounts receivable, sale of inventory or other disposition of the Prepetition Collateral, constitutes proceeds of the Prepetition Collateral, as applicable, within the meaning of section 363(a) of the Bankruptcy Code ("<u>Cash Collateral</u>").

F.    <u>Consent by Prepetition Secured Parties</u>.  The Prepetition Agent, with the consent of the Prepetition First Lien Lenders, and the Affiliate Lender have consented to, conditioned on the entry of this Interim Order, the Debtor's proposed use of Prepetition Collateral (including Cash Collateral), on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided for in this Interim Order, including that the Adequate Protection Obligations (as defined below) are subject and subordinate only to the Carve Out.

G.    <u>Good Cause Shown</u>.  Good cause has been shown for entry of this Interim Order. The Debtor's ability to minimize disruption of their business, finance their operations, preserve and maximize the going concern value of the Debtor's assets and complete a successful chapter 11 process requires the Debtor's continued use of Cash Collateral.  Absent the Debtor's ability to use the Prepetition Collateral (including Cash Collateral) and the adequate protection arrangements provided herein, the Debtor would lack sufficient available sources of capital or financing and would be unable to pay its expenses, to the severe detriment of its estate and creditors.  The terms of the use of the Prepetition Collateral (including Cash Collateral) and proposed adequate protection arrangements pursuant to this Interim Order are fair and reasonable, in the best interests of the Debtor and its estate, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably

equivalent value and fair consideration for the use of Prepetition Collateral (including Cash Collateral).

H.    _Good Faith_.    The terms of the use of Prepetition Collateral (including Cash Collateral), including the adequate protection arrangements provided herein, are the result of extensive negotiations conducted in good faith and at arm's length among the Debtor and the Prepetition First Lien Secured Parties for the benefit of the Prepetition Secured Parties.  Pursuant to sections 105, 361 and 363 of the Bankruptcy Code, the Prepetition Secured Parties are entities that have acted in "good faith" in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under section 363(m) of the Bankruptcy Code.

I.    _Full Force and Effect; No Acceleration_.    Notwithstanding anything to the contrary in this Interim Order, as of the date hereof (a) the Prepetition Credit Agreement remains in full force and effect and no Event of Default has occurred and is continuing thereunder and (b) the Prepetition First Lien Obligations of the Non-Debtor Obligors have not accelerated and no amounts are currently due and payable by the Non-Debtor Obligors.

**BASED UPON THE STIPULATED TERMS SET FORTH HEREIN AND THE FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    _Motion Granted_.    The Motion is GRANTED on an interim basis as set forth herein.  Any objection to entry of this Interim Order to the extent not withdrawn or resolved is hereby overruled.

2.    _Authorization of Use of Cash Collateral, Prepetition Collateral and Adequate Protection Collateral_.    Subject to the terms and conditions of this Interim Order and the Budget (as defined in paragraph 3(a) below), during the period from the Petition Date to and including the Termination Date (as defined in paragraph 12 below), the Debtor may use Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral (as defined below) and

01:22949848.4

only to fund: (i) working capital requirements; (ii) general corporate purposes; and (iii) the costs and expenses (including making adequate protection payments hereunder and, subject to further order of the Court, payment of the allowed reasonable and documented fees and expenses of professionals retained by the Debtor's estate) of administering the Chapter 11 Case (including, without limitation, payments under the Carve Out as provided herein); provided, however, that, except as otherwise expressly consented to by the Prepetition Agent (on behalf of the Prepetition First Lien Lenders), nothing in this Interim Order authorizes the Debtor to transfer the Cash Collateral, Prepetition Collateral and/or Adequate Protection Collateral of the Prepetition Secured Parties to the SNF Entities or use the Cash Collateral, Prepetition Collateral and Adequate Protection Collateral of the Prepetition Secured Parties to satisfy any obligations of the SNF Entities (including satisfying the obligations of SNF Entities through payment on account of a guarantee of such obligations by any Holdco (as defined in the Prepetition Credit Agreement)).

3.    Budget, Reporting Requirements, Access to Books and Records.

(a)    Subject to applicable confidentiality agreements, the Debtor shall provide to the Prepetition Agent, the Prepetition First Lien Lenders and their advisors: (i) the monthly financial reporting given to the U.S. Trustee; (ii) all of the financial reporting as required under and in all instances consistent with the Prepetition Loan Documents; (iii) such other reports and information as the Prepetition First Lien Secured Parties and the Debtor may reasonably agree; and (iv) (x) an initial 13-week budget setting forth the Debtor's projected receipts, disbursements and accrued Professional Fees (as defined below), attached as Exhibit 1 hereto and incorporated by reference herein, which shall be deemed approved by the Prepetition First Lien Lenders as of

01:22949848.4

the date hereof (the "Budget"); (y) on or before the last Business Day[4] of the first full week after the date of the entry of this Interim Order, and on or before last Business Day every four weeks thereafter, an updated proposed budget for the calendar week then ended and the immediately ensuing 12 weeks (for a total of 13 weeks) (each, a "Proposed Budget"), which, upon written approval of such Proposed Budget by the Prepetition First Lien Secured Parties or their advisors, such approval not to be unreasonably withheld (provided that, for the avoidance of doubt, the Debtor shall be permitted to seek a determination of the Court as to whether the Prepetition First Lien Secured Parties have unreasonably withheld such approval), shall become the Budget effective as of the first Monday following such written approval; provided, that, unless and until the Prepetition First Lien Secured Parties or their advisors have approved the Proposed Budget or any other proposed modification to the Budget then in effect in accordance with the immediately preceding clause, the Debtor shall remain subject to the terms of the Budget then in effect in accordance with the terms of this Interim Order; and (z) concurrently with the delivery of each Proposed Budget, a variance report on a line-item basis for each of the preceding four weeks comparing the actual receipts and disbursements of the Debtor with the projected receipts, disbursements and accrued Professional Fees in the Budget (the "Budget Variance Report"). The Prepetition First Lien Secured Parties' consent to the Budget shall not be construed as consent to the use of Prepetition Collateral (including Cash Collateral) or Adequate Protection Collateral after the occurrence and during the continuance of an "Event of Default" under the Prepetition Credit Agreement, regardless of whether the aggregate funds shown on the Budget have been expended.

---

[4] For purposes of this Interim Order, "Business Day" shall mean a day other than a Saturday, Sunday or other day on which commercial banks in New York City are authorized or required by law to close.

(b)    In no event shall the aggregate actual disbursements for any four-week period exceed the aggregate amount budgeted for such period by more than twenty-five percent (25%) of the budgeted amount (such amount, plus any permitted Carry Forward (as defined below), the "Authorized Variance"); provided, however, that the Debtor is authorized to use Cash Collateral and pay through any subsequent week expenses of the estates for weekly budgeted items not paid within a four-week period thereafter (thus authorizing the Debtor to "carry forward" projected expenses for a limited period of time) (such budgeted amounts and actual disbursements carried forward, the "Carry Forwards"). The Budget Variance Report shall include an explanation, in reasonable detail, of any material variance.

(c)    In addition to, and without limiting, whatever rights to access the Prepetition First Lien Secured Parties or their advisors have under the Prepetition Loan Documents, the Prepetition First Lien Secured Parties or their advisors shall be given reasonable access to the Debtor's books and records for purposes of monitoring the Debtor's business and the value of the Prepetition Collateral (including Cash Collateral) and the Adequate Protection Collateral and to discuss the Debtor's affairs, finances and condition with the Debtor's officers, financial advisors and consultants, subject to such officers', financial advisors' and consultants' reasonable availability.

4.    Adequate Protection Obligations.    Subject to the Carve Out and the relative priorities set forth in paragraph 6 below and in the Prepetition Loan Documents and the Affiliate Note (including the Affiliate Pledge), as an inducement to the Prepetition Secured Parties to permit the use of Cash Collateral as provided for in this Interim Order and as adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral), for and equal in amount to any post-petition diminution in value of their interests in

01:22949848.4

Prepetition Collateral (including Cash Collateral) resulting from, among other things, the use, sale, lease, consumption or disposition of Prepetition Collateral (including Cash Collateral), the subordination of the Prepetition Liens to the Carve Out and the imposition of the automatic stay (collectively, the "Diminution in Value"), pursuant to sections 361, 362 and 363 of the Bankruptcy Code, the Prepetition Agent, for the benefit of itself and the Prepetition First Lien Lenders and the Affiliate Lender (subject to paragraph 6(e) below) shall receive the following (collectively, the "Adequate Protection Obligations"):

(a)    Adequate Protection Claims.    Subject to the relative priorities set forth in paragraph 6 below and in the Prepetition Loan Documents and the Affiliate Note (including the Affiliate Pledge), the Prepetition Agent (for the benefit of itself and the Prepetition First Lien Lenders) and the Affiliate Lender (subject to paragraph 6(e) below) shall have allowed administrative expense claims against the Debtor as and to the extent provided in section 507(b) of the Bankruptcy Code with priority over any and all other administrative claims against the Debtor, now existing or hereafter arising, of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 105, 326, 328, 330, 331, 365, 503, 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Adequate Protection Claims"), which administrative claims shall have recourse to and be payable from all prepetition and post-petition property of the Debtor, excluding the Carve Out and any Avoidance Actions but including, subject to entry of the Final Order only, the proceeds or property recovered in respect of any Avoidance Actions (the "Avoidance Action Proceeds"); provided, however, that notwithstanding anything to the contrary in this Interim Order, the Adequate Protection Claims shall automatically be deemed satisfied in full upon the earlier of (a) the effective date of any plan of reorganization for the Debtor, which

plan provides for the reinstatement of the Prepetition First Lien Debtor Obligations and any claims against the Debtor that are held by one or more Non-Debtor Obligors and (b) with respect to the Prepetition First Lien Obligations, the repayment and satisfaction in full in cash of the Prepetition First Lien Obligations in accordance with the Prepetition Loan Documents.

(b)    <u>Adequate Protection Payments</u>.    Upon entry of this Interim Order, as further adequate protection, the Debtor is authorized and directed to pay (the "<u>Adequate Protection Payments</u>"), to the extent not otherwise paid by the Non-Debtor Obligors in accordance with the terms of the Prepetition Loan Documents, in cash, without further Court order, to the Prepetition First Lien Secured Parties, (x) to the extent incurred prior to the Petition Date, and (y) thereafter, within fifteen (15) days of receipt of invoices therefor by the Debtor (which time period may be extended by the applicable professional), the actual, reasonable and documented fees and expenses incurred in connection with the Chapter 11 Case, whether incurred before or after the Petition Date, by the Prepetition First Lien Secured Parties, including all such actual, reasonable and documented fees and expenses of (1) Akin Gump Strauss Hauer & Feld LLP, as lead counsel, (2) Blank Rome LLP, as Delaware counsel, (3) Zolfo Cooper LLC, as financial advisor and (4) any other legal or financial advisor or consultant as may be required in connection with the Chapter 11 Case (including any special or "conflicts" counsel) for the Prepetition First Lien Secured Parties, which such fees and expenses shall not be subject to disgorgement, further Court approval or allowance, or compliance with the U.S. Trustee fee guidelines; <u>provided</u>, <u>however</u>, that no such fees or expenses shall be paid by the Debtor under this Interim Order to the extent charged or incurred in connection with any Acquisition Proposal (as defined in the Plan Sponsor Agreement attached to the Plan as Exhibit D). Copies of invoices for such professionals of the Prepetition First Lien Secured Parties shall be provided to

counsel to the Debtor, counsel to Quality Care Properties, Inc. and its direct and indirect subsidiaries (collectively, "QCP"), the U.S. Trustee and counsel to any Creditors' Committee, which parties shall have ten (10) days to review and lodge objections to such invoices before payment of the same by the Debtor, with any dispute to be resolved by the Bankruptcy Court at the next omnibus hearing date or such other date as the parties may agree or the Bankruptcy Court may order.

(c)     Adequate Protection Liens.     Effective as of the Petition Date, the Prepetition Agent, for the benefit of itself and the Prepetition First Lien Lenders, and the Affiliate Lender (subject to the Affiliate Pledge) shall be granted, without the necessity of execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents, or by possession or control, on all Prepetition Collateral (including Cash Collateral) (subject to paragraph 6(e) below), post-petition security interests and liens solely to the extent of any actual Diminution in Value (all property identified in clauses (i) and (ii) of this paragraph 4(c) collectively referred to as the "Adequate Protection Collateral" and, all such liens and security interests, the "Adequate Protection Liens"):

(i)     Liens Junior to Certain Existing Liens. Subject to the priorities set forth in paragraph 6 below, the Prepetition Loan Documents and the Affiliate Note (including the Affiliate Pledge), a junior lien on and security interest in all prepetition and post-petition property of the Debtor (other than equity interests in the SNF Entities and the property described in clause (ii) of this paragraph 4(c)), whether now existing or hereafter acquired, that is subject to (x) valid, perfected and unavoidable liens in existence immediately prior to the Petition Date that are senior in priority to the Prepetition Liens of the Prepetition Secured Parties as permitted by the terms of the Prepetition Loan Documents or (y) valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (such liens in clauses (x) and (y), the "Permitted Prior Liens").

(ii)     Liens Senior to Certain Existing Liens. Subject to the priorities set forth in paragraph 6 below, the Prepetition Loan Documents and the Affiliate Note

(including the Affiliate Pledge), a senior priming security interest in and lien on the Prepetition Collateral and all of the Debtor's now owned and hereafter-acquired real and personal property, assets and rights of any kind or nature, wherever located, including, without limitation, intercompany claims, loans and receivables, all property defined as "Collateral" under the Prepetition Credit Agreement and Prepetition Affiliate Note of the Debtor, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, accounts receivable, other rights to payment, intercompany claims, cash, inventory, general intangibles, contracts, servicing rights, servicing receivables, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, claims and causes of action (including those arising under section 549 of the Bankruptcy Code) and all proceeds of the foregoing, excluding causes of action arising under the Bankruptcy Code and all Avoidance Actions; provided, however, that, subject only to entry of the Final Order, the Adequate Protection Liens shall have recourse to the Avoidance Action Proceeds.

Notwithstanding anything to the contrary in this Interim Order: (a) the Adequate Protection Liens in respect of the Avoidance Action Proceeds shall be deemed released upon the effective date of the Plan; (b) with respect to the Prepetition First Lien Obligations, the Adequate Protection Liens shall be deemed released upon the repayment and satisfaction in full in cash of the Prepetition First Lien Obligations in accordance with the Prepetition Loan Documents; and (c) the rights of all parties in interest are reserved with respect to whether any post-petition diminution in value of the Prepetition Secured Parties' interests in Prepetition Collateral (including Cash Collateral) actually resulted from the use, sale, lease, consumption or disposition of Prepetition Collateral (including Cash Collateral), the subordination of the Prepetition Liens to the Carve Out or the imposition of the automatic stay, pursuant to sections 361, 362 and 363 of the Bankruptcy Code.

5.    Perfection of Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage,

notices of lien or other instrument or document (any such instrument or document, a "Security Document"), possession or control or the taking of any other action to validate or perfect the respective Adequate Protection Liens, or to entitle such liens to the priorities granted herein. Notwithstanding the foregoing, the Prepetition Agent (for the benefit of itself and the Prepetition First Lien Lenders), in its sole discretion, may file or record such Security Documents, which shall be deemed filed or recorded as of the Petition Date, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code to do so. In furtherance of the foregoing and without further approval of the Court, the Debtor shall execute and deliver to the Prepetition Agent, all such Security Documents, and otherwise cooperate and assist in any such filings, as may be requested to evidence, confirm, validate or perfect, or to ensure the contemplated priority of, the Adequate Protection Liens, and to pay all fees that may be required or necessary for the Debtor's performance hereunder.

6.      Priority of Adequate Protection Obligations.

(a)      Priority of Adequate Protection Claims. The Adequate Protection Claims granted to the Prepetition Agent, for the benefit of itself and the Prepetition First Lien Lenders (the "Prepetition First Lien Adequate Protection Claims") shall be senior to the Prepetition First Lien Debtor Obligations and junior only to the Carve Out. The Adequate Protection Claims granted to the Affiliate Lender (subject to paragraph (e) below) (the "Affiliate Lender Adequate Protection Claims") shall be senior to the Prepetition Affiliate Obligations and junior only to: (i) the Carve Out; (ii) the Prepetition First Lien Adequate Protection Claims; and (iii) the Prepetition First Lien Debtor Obligations.

(b)      Priority of Adequate Protection Liens. The Adequate Protection Liens granted to the Prepetition Agent, for the benefit of itself and the Prepetition First Lien Lenders

(the "Prepetition First Lien Adequate Protection Liens") shall be senior to the Prepetition Debtor First Liens and junior only to: (i) the Permitted Prior Liens; and (ii) the Carve Out. The Adequate Protection Liens granted to the Affiliate Lender (subject to paragraph (e) below) (the "Affiliate Lender Adequate Protection Liens") shall be senior to the Prepetition Affiliate Liens and junior only to: (i) the Permitted Prior Liens; (ii) the Carve Out; (iii) the Prepetition First Lien Adequate Protection Liens; and (iv) the Prepetition Debtor First Liens.

(c)    Permitted Liens.  Except to the extent of the Carve Out, the Adequate Protection Obligations granted to the Prepetition Secured Parties herein shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim under section 364 of the Bankruptcy Code or otherwise; and the Debtor shall not create, incur or suffer to exist any post-petition liens or security interests other than: (i) those granted pursuant to this Interim Order; (ii) governmental authorities', carriers', warehousemen's, mechanics', materialmens' or other like liens arising in the ordinary course of business; (iii) pledges and deposits in connection with workers' compensation, unemployment insurance and other social security legislation; (iv) deposits to secure the payment of any post-petition statutory obligations and performance bonds; and (v) such other liens or security interests existing as of the Petition Date that are permissible under the Prepetition Loan Documents; provided, that the Debtor shall provide prompt notice to the Prepetition Agent of any post-petition liens on or security interests in the Prepetition Collateral or Adequate Protection Collateral that have a value of $100,000 or more.

(d)    Subordination of Intercompany Claims and Liens.  On the terms set forth in this Interim Order, the Prepetition Loan Documents and the Prepetition Affiliate Note, as

01:22949848.4

18

applicable, (i) all intercompany or affiliate claims against the Debtor, including the Prepetition Affiliate Obligations and the Adequate Protection Claims granted to the Affiliate Lender (subject to paragraph (e) below), and, to the extent secured, all such liens, will be contractually subordinated to the Adequate Protection Obligations granted to the Prepetition First Lien Secured Parties, the Prepetition First Lien Debtor Obligations and the Prepetition Debtor First Liens; and (ii) all intercompany or affiliate claims against the Debtor, other than the Prepetition Affiliate Obligations and the Adequate Protection Claims granted to the Affiliate Lender (subject to paragraph 6(e) below), and, to the extent secured, all such liens will be subordinated to the Adequate Protection Obligations granted to the Affiliate Lender (subject to paragraph 6(e) below) and the Prepetition Affiliate Obligations.

(e)     Pledge of Affiliate Obligations.    For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, any and all Adequate Protection Obligations granted or provided for in this Interim Order to the Affiliate Lender shall be deemed to be for the benefit of the Prepetition First Lien Secured Parties pursuant to this Interim Order and as otherwise set forth in the Affiliate Pledge.

7.     Section 507(b) Reservation.    Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their interests in Prepetition Collateral (including Cash Collateral) during the Chapter 11 Case. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any

diminution in value of their respective interests in Prepetition Collateral (including Cash Collateral).

      8.      <u>Reserved</u>.

      9.      <u>Carve Out</u>.  For purposes hereof, the term "<u>Carve Out</u>" shall mean the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under 28 U.S.C. § 1930(a); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) all accrued but unpaid costs, fees and expenses (the "<u>Professional Fees</u>") incurred by persons or firms retained by the Debtor pursuant to Bankruptcy Code sections 327, 328 or 363 (collectively, the "<u>Debtor Professionals</u>") and any official committee appointed in the Chapter 11 Case, including any Creditors' Committee, appointed pursuant to section 1102 of the Bankruptcy Code (the "<u>Committee Professionals</u>" and, together with the Debtor Professionals, the "<u>Professionals</u>"), at any time before or on the first Business Day following delivery by the Prepetition Agent of a Carve Out Trigger Notice (as defined below), to the extent allowed by the Court (the "<u>Pre-Termination Amount</u>"); and (iv) the Professional Fees of the Professionals in an aggregate amount not to exceed $2,000,000 incurred after the first Business Day following delivery of the Carve Out Trigger Notice to the extent allowed by the Court (the amount set forth in this clause (iv), the "<u>Post-Termination Amount</u>" and, together with the Pre-Termination Amount, the "<u>Professional Fees Amount</u>"); <u>provided</u>, that nothing herein shall be construed to impair the ability of any party to object to allowance or payment of the Professional Fees described in preceding clauses (iii) and (iv).  For purposes of the foregoing, "<u>Carve Out Trigger Notice</u>" shall mean a written notice delivered by email (or other electronic means) by counsel to the Prepetition First Lien Secured Parties to counsel to the Debtor, counsel to QCP, the U.S. Trustee and counsel to any Creditors' Committee, providing

notice that the Termination Date (as defined below) has occurred. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in the Prepetition Loan Documents, the Carve Out shall be senior to the Adequate Protection Obligations, any and all other forms of adequate protection and the liens and claims securing the Prepetition Obligations.

10.    <u>Investigation Budget and Limitations on Use of Cash Collateral</u>. Notwithstanding anything to the contrary set forth in this Interim Order, no proceeds of Prepetition Collateral (including Cash Collateral) or the Adequate Protection Collateral, or the Carve Out may be used, directly or indirectly, for the purpose of, or for the payment of the fees and expenses of any person incurred: (a) to investigate (except as expressly provided herein), initiate, prosecute, join or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense or other litigation of any type (i) against any of the Prepetition Secured Parties (each in their capacities as such) or seeking relief that would impair the rights and remedies of the Prepetition Secured Parties (each in their capacities as such) under the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge) or this Interim Order, including, without limitation, for the payment of any services rendered by the Debtor Professionals or the Committee Professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief that would impair the ability of any of the Prepetition Secured Parties to recover on the Prepetition Collateral or the Adequate Protection Collateral or seek affirmative relief against any of the Prepetition Secured Parties related to the Prepetition Obligations or the Prepetition Liens; (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Prepetition

Obligations or the Prepetition Secured Parties' liens or security interests in the Prepetition Collateral; or (iii) for monetary, injunctive or other affirmative relief against the Prepetition Secured Parties, or their respective liens on or security interests in the Prepetition Collateral, that would impair the ability of any of the Prepetition Secured Parties to assert or enforce any lien, claim, right or security interest or to realize or recover on the Prepetition Obligations; (b) for objecting to or challenging in any way the legality, validity, priority, perfection or enforceability of the claims, liens or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Obligations; (c) for asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to the Prepetition Obligations or the Prepetition Liens; or (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Obligations or the Prepetition Liens; provided, that no more than $50,000 (the "Investigation Budget") of the proceeds of the Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral, in the aggregate, may be used by the Creditors' Committee, if appointed, solely to investigate the foregoing matters within the Challenge Period (as defined below).

11.      Reservation of Certain Third Party Rights, Challenges and Claims.

(a)      The Debtor's acknowledgments, stipulations, admissions, waivers and releases set forth in this Interim Order shall be binding on the Debtor, its estate and its representatives, affiliates (as defined in section 101 of the Bankruptcy Code) successors and assigns. The acknowledgments, stipulations, admissions, waivers and releases contained in this Interim Order also shall be binding upon all other parties in interest, including any Creditors'

Committee, or any chapter 7 or chapter 11 trustee appointed or elected for the Debtor (a "Trustee"), and each of their respective representatives, successors and assigns, unless (i) such party, in each case, with requisite standing, has duly filed an adversary proceeding or contested matter challenging the validity, perfection, priority, extent or enforceability of the Prepetition Liens or the Prepetition Obligations or otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Collateral, the Prepetition Liens or the Prepetition Obligations by no later than (x) with respect to any Creditors' Committee, the date that is the earlier of (a) the Effective Date (as defined in the Plan) or (b) the later of (i) sixty (60) days after the Creditors' Committee's formation and (ii) seventy-five (75) days after the entry of this Interim Order and (y) with respect to other parties in interest with requisite standing (other than the Creditors' Committee, but including any chapter 7 trustee) no later than the date that is the earlier of (a) the Effective Date (as defined in the Plan) and (b) seventy-five (75) days after the entry of this Interim Order (the time period established by the later of the foregoing clauses (x) and (y) the "Challenge Period"); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding. Notwithstanding the foregoing, if a chapter 7 or 11 trustee is appointed (a) prior the expiration of the Challenge Period, he or she shall have until the later of the expiration of the Challenge Period or 10 days from the date of appointment to assert any Claims and Defenses and (b) if the Creditors' Committee has asserted any Claims and Defenses prior to the expiration of the Challenge Period, the chapter 7 trustee or chapter 11

trustee will stand in the shoes of the Creditors' Committee in connection with any such Claims and Defenses.

(b)    If no Claims or Defenses are timely asserted in an adversary or contested matter by a party with requisite standing prior to the expiration of the Challenge Period, then, without further order of this Court: (i) the Prepetition Obligations under the Prepetition Loan Documents and the Prepetition Affiliate Note (including the Affiliate Pledge) shall constitute allowed claims, not subject to any Claims and Defenses (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by section 101(5) of the Bankruptcy Code), impairment, subordination (whether equitable, contractual or otherwise) or other challenge of any kind pursuant to the Bankruptcy Code or applicable nonbankruptcy law), for all purposes in the Chapter 11 Case and any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code (each a "Successor Case"); and (ii) the Prepetition Obligations, the Prepetition Liens and the Prepetition Secured Parties (in their capacities as such) shall not be subject to any other or further challenge and any party in interest shall be forever enjoined and barred from seeking to exercise the rights of the Debtor's estate or taking any such action, including any successor thereto (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period).

(c)    If any such contested matter or adversary proceeding is timely filed by a party with requisite standing prior to the expiration of the Challenge Period, (i) the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive

on any Creditors' Committee and any other party in the Chapter 11 Case, including any Trustee, except as to any stipulations or admissions that are specifically and expressly challenged in such contested matter or adversary proceeding and (ii) any Claims and Defenses not brought in such contested matter or adversary proceeding shall be forever barred; provided that, if and to the extent any challenges to a particular stipulation or admission are withdrawn, denied or overruled by a final non-appealable order, such stipulation or admission also shall be binding on the Debtor's estate and all parties in interest.

(d)    Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee, standing or authority to pursue any estate cause of action belonging to the Debtor or its estate, including, without limitation, any challenge with respect to the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge), the Prepetition Obligations or the Prepetition Liens.

12.    Termination. The Debtor's authorization to use Cash Collateral pursuant to this Interim Order shall terminate (the date of any such termination, the "Termination Date") and the Adequate Protection Obligations shall become due and payable, upon the occurrence of any Termination Event (as defined below) without further notice to the Debtor or any other parties in interest or action by the Court, unless otherwise ordered by the Court or waived in writing by the Prepetition First Lien Secured Parties; provided that the Termination Date shall occur on the date that is the fifth (5th) Business Day following the delivery of a written notice (any such notice, a "Termination Notice" and, any such five Business-Day period of time following delivery of a Termination Notice, the "Termination Notice Period") by the Prepetition First Lien Secured Parties by electronic mail to the Debtor and its counsel, QCP's counsel, the U.S. Trustee, and counsel to the Creditors' Committee, if any, of the occurrence of any of the events set forth

below unless such occurrence is cured by the Debtor prior to the expiration of the Termination

Notice Period with respect to such clause or such occurrence is waived by the Prepetition First

Lien Secured Parties in their sole discretion; provided, further, that, (i) during the Termination

Notice Period, the Debtor shall be entitled to continue to use the Cash Collateral in accordance

with the terms of this Interim Order and (ii) nothing contained herein shall prohibit or restrict the

Debtor from seeking further relief from this Court regarding the use of Cash Collateral following

the delivery of any Termination Notice and/or whether a Termination Event has occurred under

the terms of this Interim Order (the events set forth in clauses (a) through (n) below are

collectively referred to herein as the "Termination Events"):

(a)    the date that is forty-five (45) days after the date this Interim Order is entered, if the Final Order has not been entered by the Court on or before such date;

(b)    failure of the Debtor to make any payment under this Interim Order to any Prepetition Secured Party after such payment becomes due and such failure continues for five (5) Business Days;

(c)    failure of the Debtor to (i) comply with any material provision of, or any other covenant or agreement specified in, this Interim Order (except as set forth in the following clause (ii)), in each case, which such failure continues for a period of five (5) Business Days from written notice from the Prepetition First Lien Secured Parties to the Debtor; or (ii) unless waived in writing by the Prepetition First Lien Secured Parties, comply with paragraphs 2 and 3 of this Interim Order;

(d)    entry of an order reversing, staying, vacating or otherwise modifying the terms of this Interim Order in a manner materially adverse to the Prepetition Secured Parties without the prior written consent of the Prepetition First Lien Secured Parties;

(e)    consummation of a sale (in one transaction or in a series of transactions) of all or substantially all of the assets of the Debtor and its subsidiaries pursuant to section 363 of the Bankruptcy Code (or otherwise);

(f)    entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;

(g)    entry of an order appointing a trustee, responsible officer or any examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code or any other representative with expanded powers relating to the operation of the Debtor's businesses in the Chapter 11 Case;

01:22949848.4

(h)    termination of the periods during which the Debtor has the exclusive right to file a chapter 11 plan and solicit acceptances thereof pursuant to section 1121 of the Bankruptcy Code;

(i)    entry of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code providing relief to any entity other than the Prepetition Secured Parties to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on the Prepetition Collateral or the Adequate Protection Collateral in excess of an aggregate value of $100,000 without the prior written consent of the Prepetition First Lien Secured Parties in their sole discretion;

(j)    filing by the Debtor of any writing, motion, pleading, application or proceeding challenging the validity, enforceability, perfection or priority of the Prepetition Obligations or the Prepetition Liens or asserting any other cause of action against or with respect to the Prepetition Obligations, Prepetition Liens, Prepetition Collateral or any of the Prepetition Secured Parties;

(k)    filing by the Debtor of a motion seeking to create any post-petition liens on or security interests in all or any portion of the Prepetition Collateral, other than those granted or permitted pursuant to this Interim Order or approved by the Prepetition First Lien Secured Parties in writing; provided, that nothing herein shall preclude the Debtor's filing of a motion seeking approval of debtor-in-possession financing in form and in substance satisfactory to the Prepetition First Lien Secured Parties;

(l)    filing by the Debtor of a disclosure statement or chapter 11 plan that proposes to impair any claims held by the Prepetition First Lien Secured Parties;

(m)    acceleration of the loans under the Prepetition Credit Facility and the termination of all commitments thereunder in accordance with the terms of this Interim Order or the other Prepetition Loan Documents (including, without limitation, as a result of the occurrence of an Event of Default under the Prepetition Credit Agreement);

(n)    the entry of an order charging any of the Prepetition Collateral or Adequate Protection Collateral under section 552(b) of the Bankruptcy Code or section 506(c) of the Bankruptcy Code; and

(o)    the Debtor shall fail to maintain its cash management arrangements in a manner consistent with Section 6.11 of the Prepetition Credit Agreement and the *Order (I) Authorizing Continued Use of Prepetition Bank Account, (II) Authorizing Continued Use of Existing Business Forms, (III) Waiving the Requirements of 11 U.S.C. § 345(b), and (IV) Granting Related Relief*, entered in form and substance satisfactory to the Prepetition First Lien Secured Parties.

13.    Rights and Remedies Upon Termination Date.

(a)    The automatic stay under section 362 of the Bankruptcy Code is hereby vacated and modified to the extent necessary to permit the Prepetition Secured Parties to

01:22949848.4

exercise, upon the occurrence of the Termination Date, all rights and remedies against the Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral provided for in this Interim Order, the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge) and applicable law, unless the Court has determined otherwise. The delay or failure of the Prepetition Secured Parties to exercise rights and remedies under the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge), this Interim Order or applicable law shall not constitute a waiver of their respective rights thereunder or otherwise.

(b)     During the Termination Notice Period (if applicable), except as may be otherwise ordered by the Court, the Debtor shall not use any Cash Collateral to pay any expenses except those which are (i) necessary to preserve its going concern value or (ii) necessary to contest in good faith the use of Cash Collateral following the delivery of any Termination Notice and/or whether a Termination Event has occurred or is continuing.  The only permissible basis for the Debtor to contest, challenge or object to a Termination Notice shall be solely with respect to the validity of the Termination Event giving rise to such Termination Notice (*i.e.*, whether such Termination Event validly occurred and has not been cured or waived in accordance with this Interim Order).

14.     Expenses and Indemnification. Subject to entry of the Final Order, in addition to the Debtor's obligations to pay the actual, reasonable and documented fees and expenses of the professional advisors of the Prepetition First Lien Secured Parties in accordance with paragraph 4(b) hereof, the Debtor will indemnify the Prepetition Secured Parties and their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each an "Indemnified Person") and

hold them harmless from and against all reasonable and documented out-of-pocket costs, expenses (including, but not limited to, reasonable and documented legal fees and expenses) and liabilities arising out of or relating to the actual or proposed use of Prepetition Collateral (including Cash Collateral); provided, that, no such person will be indemnified for costs, expenses or liabilities to the extent determined by a final, non-appealable judgment of a court of competent jurisdiction to have been incurred solely by reason of the gross negligence or willful misconduct of such person (or their related persons). No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Debtor or any shareholders or creditors of the Debtor for or in connection with the transactions contemplated hereby or any actual or proposed use of Prepetition Collateral (including Cash Collateral), except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Person's gross negligence or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential or punitive damages.

15.    Release. Subject to the rights and limitations set forth in paragraph 11 above (and with respect to the Affiliate Lender, subject to entry of the Final Order), the Debtor and its estate, on its own behalf and on behalf of each of its predecessors, their successors and assigns shall to the maximum extent permitted by applicable law, unconditionally, irrevocably and fully forever release, remise, acquit, relinquish, irrevocably waive and discharge each of the Prepetition Secured Parties, their respective affiliates and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest (collectively, each in their

capacity as such, the "Releasees"), of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, that exist on the date hereof with respect to or relating to the Prepetition Credit Facility, the Prepetition Loan Documents, the Prepetition Affiliate Note (including the Affiliate Pledge) and the transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection or avoidability of the liens or claims of the Prepetition Secured Parties. The Debtor further waives and releases any defense, right of counterclaim, right of setoff or deduction of the payment of the Prepetition Obligations and the Adequate Protection Obligations that the Debtor now has or may claim to have against the Releasees arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order.

16.     Reservations of Rights of the Prepetition Secured Parties. Notwithstanding any other provision herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair:  (a) any of the Prepetition Secured Parties' rights to seek other or supplemental relief, including the right to seek additional or different adequate protection; (b) any of the Prepetition Secured Parties' rights under the

Bankruptcy Code or under nonbankruptcy law, including, without limitation, the right of any of the Prepetition Secured Parties to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal or conversion of the Chapter 11 Case, (iii) seek the appointment of a chapter 11 trustee or examiner with expanded powers in the Chapter 11 Case, or (iv) propose a chapter 11 plan, subject to section 1121 of the Bankruptcy Code; or (c) any other rights, claims or privileges of any of the Prepetition Secured Parties, whether now existing or hereafter arising under or any provisions of the Prepetition Loan Documents or the Prepetition Affiliate Note (including the Affiliate Pledge), whether legal, equitable or otherwise, including, without limitation, in connection with all Termination Events and Events of Default (as defined in the Prepetition Credit Agreement and whether arising prior to or after the Petition Date). Nothing in this Interim Order shall affect the rights of the Prepetition Agent, the Prepetition Lenders or other Loan Parties (other than the Debtor) to amend, modify, supplement, extend or waive any provision of the Prepetition Loan Documents and the Prepetition Affiliate Note (including the Affiliate Pledge) in accordance with their respective terms so long as any such amendment, modification, supplement, extension or waiver does not require the consent of the Debtor or adversely impact the rights or obligations of the Debtor under the Prepetition Loan Documents or the Prepetition Affiliate Note, as applicable.

17.    <u>Sections 506(c) and 552(b)</u>.  In light of the Prepetition Secured Parties' agreement to subordinate their liens and superpriority claims to the Carve Out and to permit the use of Prepetition Collateral (including Cash Collateral) as set forth herein, subject to and effective upon entry of the Final Order, the Prepetition Secured Parties are entitled to the rights and benefits of section 552(b) of the Bankruptcy Code, as well as (i) a waiver of any "equities of the case" claims by the Debtor under section 552(b) of the Bankruptcy Code and (ii) a waiver of the

right of the Debtor to recover from the Prepetition Collateral or the Adequate Protection Collateral under section 506(c) of the Bankruptcy Code.

18. <u>Insurance</u>. At all times, the Debtor shall maintain casualty and loss insurance coverage for the Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral on substantially the same basis as maintained prior to the Petition Date. Effective as of entry of this Interim Order, and to the fullest extent permitted by law, the Prepetition Agent (for the benefit of itself and the Prepetition First Lien Lenders) shall be deemed to be, without any further action or notice, named as an additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to Prepetition Collateral (including Cash Collateral) and Adequate Protection Collateral.

19. <u>Proofs of Claim</u>. None of the Prepetition Secured Parties shall be required to file proofs of claim in the Chapter 11 Case or any Successor Case for any claim allowed herein; <u>provided</u>, that the Prepetition Agent (on behalf of itself and the Prepetition First Lien Lenders) may file, amend and/or supplement proofs of claim in the Chapter 11 Case or any Successor Case for any respective claim allowed herein. Any such proof of claim filed by the Prepetition Agent or the Affiliate Lender shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the respective Prepetition Secured Parties. Any order that has been or will be entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in the Chapter 11 Case or any Successor Case shall not apply to the Prepetition Secured Parties.

20.    <u>Amendments or Modifications of Order</u>.

(a)    No waiver, modification or amendment of any of the provisions of this Interim Order shall be effective unless set forth in writing, signed by, or on behalf of, the Debtor and the Prepetition Agent and approved by the Court after notice to parties in interest.

(b)    Unless and until all Prepetition First Lien Debtor Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, the Debtor irrevocably waives the right to seek and shall not seek or consent to, directly or indirectly (i) except as permitted under the Prepetition Loan Documents or the Prepetition Affiliate Note (including the Affiliate Pledge), as applicable, and with the prior written consent of the Prepetition First Lien Secured Parties, any modification, stay, *vacatur* or amendment of this Interim Order; (ii) except as permitted under the Prepetition Loan Documents or the Prepetition Affiliate Note (including the Affiliate Pledge), as applicable, any lien on any of the Prepetition Collateral (including Cash Collateral) or Adequate Protection Collateral with priority equal or superior to the Adequate Protection Liens or the Prepetition Liens, as the case may be; (iii) an order converting or dismissing the Chapter 11 Case; (iv) an order appointing a chapter 11 trustee in the Chapter 11 Case; or (v) an order appointing an examiner with expanded powers the Chapter 11 Case.

21.    <u>Priority of Terms</u>. In the event of any inconsistency between the provisions of (a) the Motion, the Prepetition Loan Documents (as such pertain to the Debtor), the Prepetition Affiliate Note (including the Affiliate Pledge), any other order of this Court or any other agreements, on the one hand, and (b) this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the Prepetition Loan Documents, the terms of this Interim Order shall govern solely to the extent pertaining to the Debtor, provided that, for the avoidance of doubt, nothing in this Interim Order shall (i) be

deemed to impair any rights of the Prepetition First Lien Secured Parties under the Prepetition Loan Documents with respect to the Non-Debtor Obligors or (ii) except as set forth in this Interim Order, be deemed to impair any rights or obligations of any Non-Debtor Obligor under the Prepetition Loan Documents.

22.    Binding Effect; Survival of Order; Successors and Assigns.

(a)    Subject in all respects to paragraph 11 of this Interim Order, immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the Prepetition Secured Parties; provided, that, except to the extent expressly set forth in this Interim Order, the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the Debtor's estate.

(b)    The provisions of this Interim Order, including the Adequate Protection Obligations and all other rights, priorities and remedies of the Prepetition Secured Parties granted by the provisions of this Interim Order, and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any chapter 11 plan in the Chapter 11 Case, (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing the Chapter 11 Case, (iv) withdrawing of the reference of the Chapter 11 Case from this Court or (v) providing for abstention from handling or retaining of jurisdiction of the

Chapter 11 Case in this Court. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, *vacatur* or stay shall not affect the rights and priorities of the Prepetition Secured Parties granted herein or the validity, enforceability and priority of the Adequate Protection Obligations granted in connection herewith, which such obligations shall continue in full force and effect until indefeasibly paid in full in cash.

23.    Effectiveness. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

24.    Final Hearing. The Final Hearing, if required, on the Motion will be held on April 6, 2018 at 10:00 a.m. (prevailing Eastern Time). Any objections or responses to entry of a Final Order granting the requested relief shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware (with a courtesy copy to be sent to the Court's chambers) and be served upon: (a) the Debtor, 333 N. Summit St., Toledo, Ohio 43604 (Attn: Richard A. Parr II (rparr@hcr-manorcare.com)); (b) proposed counsel to the Debtors, Sidley Austin LLP, One South Dearborn Street, Chicago, Illinois 60603 (Attn: Larry J. Nyhan (lnyhan@sidley.com) and Dennis M. Twomey (dtwomey@sidley.com)); (c) proposed co-counsel to the Debtors, Young Conway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Edmon L. Morton (emorton@ycst.com) and Justin H. Rucki (jrucki@ycst.com)); (d) counsel to the Prepetition First Lien Secured Parties, (i) Akin

Gump Strauss Hauer & Feld LLP, Bank of America Tower, One Bryant Park, New York, NY 10036 (Attn:    Philip   C.   Dublin   (pdublin@akingump.com)   and   Alexis   Freeman (afreeman@akingump.com)) and (ii) Blank Rome LLP, 1201 North Market Street, Wilmington, DE 19801 (Attn: Stanley Tarr (starr@blankrome.com)); (e) counsel to QCP, (i) Sullivan and Cromwell LLP, 125 Broad Street, New York, NY 10004 (Attn: Andrew G. Dietderich (dietdericha@sullcrom.com) and David R. Zylberberg (zylberbergd@sullcrom.com)) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19899 (Attn: Derek C. Abbott (dabbott@mnat.com)); (f) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Linda Casey, Esq.); and (g) all parties entitled to notice pursuant to Local Rule 9013-1(m), in each case to allow actual receipt by the foregoing no later than March 29, 2018 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").    Any objection shall set forth in writing and with particularity the factual and legal bases of the objection.  If no objections are filed to the Motion before the Objection Deadline, the Court may enter the Final Order without further notice or hearing.

25.    Jurisdiction.  Notwithstanding any stay, modification or *vacatur* of this Interim Order, or the entry of any subsequent order in the Chapter 11 Case or in any Successor Case, the Court has and will retain jurisdiction to enforce and to adjudicate any and all matters arising from or related to the interpretation or implementation of this Interim Order according to its terms.

Dated: March 6, 2018

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

01:22949848.4