IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HCR MANORCARE, INC.,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No. 18-10467 (KG)<br><br>**Hearing Date: April 6, 2018 at 10:00 a.m. (ET)**<br>**Objection Deadline: March 30, 2018 at 4:00 p.m. (ET)** |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE RETENTION AND EMPLOYMENT
OF MOELIS & COMPANY LLC AS INVESTMENT BANKER TO
THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC*
TO THE PETITION DATE PURSUANT TO SECTIONS 327(a) AND 328(a)
OF THE BANKRUPTCY CODE, (II) WAIVING CERTAIN REQUIREMENTS
OF LOCAL RULE 2016-2 AND (III) GRANTING RELATED RELIEF**

HCR ManorCare, Inc., the above-captioned debtor and debtor in possession (the "Debtor" and, together with its non-debtor affiliates, the "Company"), submits this application (this "Application") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the Debtor to retain Moelis & Company LLC ("Moelis") as investment banker to the Debtor, *nunc pro tunc* to March 4, 2018 (the "Petition Date"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (ii) modifying the timekeeping requirements of Local Rule 2016-2 and the guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") and (iii) granting related relief.

---

[1] The last four digits of the Debtor's federal tax identification number are 9231. The Debtor's mailing address is 333 N. Summit St., Toledo, OH 43604.

01:22995723.1

In support of this Application, the Debtor submits the declaration of Adam B. Keil, a Managing Director of Moelis (the "Keil Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Debtor respectfully states as follows:

## STATUS OF THE CASE AND JURISDICTION

1. On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtor continues, through its direct and indirect non-debtor subsidiaries, to operate the Company's businesses and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner in this case, and no statutory committee has been appointed.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent, pursuant Local Rule 9013-1(f), to the entry of a final order or judgment by the Court in connection with this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory and other bases for the relief requested in this Application are sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.

## THE PREPACKAGED PLAN

5. On the Petition Date, the Debtor filed the *Prepackaged Plan of Reorganization for HCR ManorCare, Inc.* [D.I. 5] (the "Plan") and the related disclosure statement [D.I. 6] (the

01:22995723.1

"Disclosure Statement"). The Court has scheduled a combined hearing to approve the Disclosure Statement and confirm the Plan for April 13, 2018 at 2:00 p.m. (prevailing Eastern Time). The sole class entitled to vote to accept or reject the Plan has voted unanimously to confirm the Plan. See D.I. 7.

## BACKGROUND OF THE COMPANY

6. Additional information regarding the Debtor, the Company's business segments, and the events preceding the Petition Date may be found in the *Declaration of John R. Castellano, Chief Restructuring Officer, in Support of the Debtor's Chapter 11 Petitions and First Day* Motions [D.I. 2].

## RELIEF REQUESTED

7. By this Application, the Debtor requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to retain and employ Moelis as investment banker for the Debtor, *nunc pro tunc* to the Petition Date, pursuant to sections 327(a) and 328 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2, in accordance with the terms of that certain engagement letter by and between the Debtor and Moelis, dated as of June 2, 2017 (the "Engagement Letter"),[2] a copy of which is attached hereto as **Exhibit C**.

## MOELIS' QUALIFICATIONS

8. Moelis is an investment banking firm with its principal office located at 399 Park Avenue, 5th Floor, New York, New York 10022. Moelis is a registered broker-dealer with the United States Securities and Exchange Commission and is a member of the Financial Industry Regulatory Authority. Moelis was founded in 2007 and is a wholly owned subsidiary of Moelis

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

& Company Group LP. Moelis & Company Group LP, together with its subsidiaries, has approximately 650 employees based in 17 offices in North and South America, Europe, the Middle East, Asia, and Australia. Moelis & Company Group LP is a subsidiary of Moelis & Company, a public company listed on the New York Stock Exchange.

9.    Moelis provides a broad range of financial advisory and investment banking services to its clients, including: (a) general corporate finance; (b) mergers, acquisitions, and divestitures; (c) corporate restructurings; (d) special committee assignments; and (e) capital raising. Moelis and its senior professionals have extensive experience in the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11. Moelis' business reorganization professionals have served as financial advisors and/or investment bankers in numerous cases, including: In re Toys "R" Us, Inc., Case No. 17-34665 (KLP) (Bankr. E.D. Va. Nov. 21, 2017) [D.I. 1054]; In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [D.I. 657]; In re Basic Energy Services, Inc., Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) [D.I. 170]; In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [D.I. 289]; In re AOG Entm't, Inc., Case No. 16-11090 (SMB) (Bankr. S.D.N.Y. June 8, 2016) [D.I. 128]; In re SFX Ent'mt, Inc., Case No. 16-10238 (MFW) (Bankr. D. Del. Mar. 21, 2016) [D.I. 265]; In re Samson Res. Corp., Case No. 15-11934 (CSS) (Bankr. D. Del. Dec. 9, 2015) [D.I. 450]; In re Am. Apparel, Inc., Case No. 15-12055 (BLS) (Bankr. D. Del. Nov. 30, 2015) [D.I. 390]; In re Allied Nev. Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [D.I. 201]; In re ITR Concession Co. LLC, Case No. 14-34284 (Bankr. N.D. Ill. Oct. 28, 2014) [D.I. 180]; In re GSE Envt'l, Inc., Case No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) [D.I. 155]; In re MACH Gen, LLC, Case No. 14-10461 (MFW) (Bankr. D. Del. Apr. 11, 2014) [D.I. 138]; In re Sorenson Commc'ns, Inc., Case No. 14-10454

(BLS) (Bankr. D. Del. Mar. 26, 2014) [D.I. 131]; In re Cengage Learning, Inc., Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. Sept. 13, 2013) [D.I. 478]; In re OSH 1 Liquidating Corp. f/k/a Orchard Supply Hardware Stores Corp., Case No. 13-11565 (CSS) (Bankr. D. Del. July 15, 2013) [D.I. 221]; In re Revel AC, Inc., Case No. 13-16253 (JHW) (Bankr. D.N.J. Apr. 17, 2013) [D.I. 149].[3]

10. The Debtor selected Moelis as its investment banker based upon, among other things: (a) the Debtor's need to retain a skilled investment banking firm to provide advice with respect to the Debtor's complex restructuring activities; (b) Moelis' extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as this case; and (c) Moelis' extensive knowledge of the Debtor, as described below. In light of the size and complexity of this chapter 11 case, Moelis' resources, capabilities, and experience are crucial to the Debtor's successful restructuring. An experienced investment banker such as Moelis fulfills a critical need that complements the services provided by the Debtor's other restructuring professionals. For these reasons, the Debtor requires Moelis' services.

11. Moelis has been advising the Debtor on strategic and restructuring initiatives since June 2017. Pursuant to the Engagement Letter, Moelis agreed to act as the Debtor's exclusive financial advisor, capital markets advisor, and investment banker in connection with a potential Restructuring, Sale Transaction and/or Capital Transaction (each of the foregoing, a "Transaction").

12. As a result of its work with the Debtor over the past nine months, including in connection with the Company's entry the Credit Facility (as defined in the Plan), Moelis has developed valuable institutional knowledge regarding the Company's businesses, financial

---

[3] Because of the voluminous nature of the orders cited herein, copies of such orders are not attached to this Application. Copies of the orders are available upon request of the Debtor's proposed counsel.

01:22995723.1

affairs, operations, capital structure, and other material information. Having worked with the Debtor's management and the Debtor's other advisors, Moelis has developed relevant experience and expertise regarding the Debtor that will assist Moelis in providing effective and efficient services in this chapter 11 case. Accordingly, the Debtor believes Moelis is well qualified to represent it in a cost-effective, efficient and timely manner, and the Debtor submits that the employment and retention of Moelis is in the best interests of the Debtor, its creditors, and all parties in interest.

## SCOPE OF MOELIS' PROPOSED SERVICES

13. The terms and conditions of the Engagement Letter were the result of significant discussions and negotiations between Moelis and the Debtor. As such, the Engagement Letter reflects the parties' mutual agreement as to the substantial pre- and post-petition efforts that have and will be required in this engagement to enable the Debtor to execute its duties as debtor in possession and to effect its reorganization efforts in this chapter 11 case.

14. Subject to further order of the Court, and consistent with the Engagement Letter, the Debtor proposes to retain Moelis to continue rendering investment banking services as outlined in the Engagement Letter and this Application. Throughout Moelis' engagement by the Debtor, Moelis has provided the following services, among others, in connection with the Debtor's restructuring efforts, and/or Moelis will provide or will continue to provide such services during this chapter 11 case at the request of the Debtor:

    (a)    assisting the Debtor in reviewing and analyzing the Debtor's results of operations, financial condition, and business plan;

    (b)    assisting the Debtor in reviewing and analyzing any potential Transaction;

    (c)    assisting the Debtor in negotiating any Transaction;

    (d)    advising the Debtor on the terms of securities it offers in any potential Capital Transaction;

(e)     advising the Debtor on its preparation of an Information Memo for, a potential Sale Transaction or Capital Transaction;

(f)     assisting the Debtor in contacting potential Acquirers or purchasers of a Capital Transaction that Moelis and the Debtor agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Debtor's assets, properties or business that is acceptable to the Debtor, subject to customary business confidentiality agreements; and

(g)     providing such other financial advisory and investment banking services in connection with any Transaction as Moelis and the Debtor may mutually agree upon.

15.     If the Debtor requests that Moelis perform services not specifically contemplated by the Engagement Letter, Moelis and the Debtor will agree, in writing, on the terms for such services and request the Court's approval thereof.

**PROFESSIONAL COMPENSATION AND EXPENSE REIMBURSEMENT**

16.     Moelis' decision to advise and assist the Debtor in connection with this chapter 11 case is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

17.     As set forth more fully in the Engagement Letter, and subject thereto, Moelis will be compensated as follows (the "Fee Structure"):[4]

- **Monthly Fee**. During the term of the Engagement Letter, a Monthly Fee of $200,000 per month, payable in advance of each month. The Debtor will pay the first Monthly Fee immediately upon execution of the Engagement Letter, and all subsequent Monthly Fees before the second day of each month, provided, however, that 50% of the Monthly Fees earned and paid starting after the commencement date of a Bankruptcy Case shall be credited (to the extent actually paid) against the Restructuring Fee in an In Court Restructuring (it being agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such credits to the Restructuring Fee earned in an In Court Restructuring result in a Restructuring Fee that is less than zero. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn

---

[4] The Engagement Letter also provides for certain additional fees, including a Restructuring Fee for a Restructuring that is not consummated in connection with a Bankruptcy Case, a Sale Transaction Fee, and a Capital Transaction Fee. Moelis earned and was paid a Capital Transaction Fee before the Petition Date in connection with the closing of the Credit Facility (as defined in the Plan).

01:22995723.1

7

and be paid the Monthly Fee every month during the term of the Engagement Letter.

- **Restructuring Fee**.  The Debtor shall pay Moelis a Restructuring Fee equal to $10,000,000 in accordance with the terms of the Engagement Letter.[5]

18.     In addition to any fees payable to Moelis the Debtor will reimburse Moelis for all of its actual, reasonable and documented expenses as they are incurred in entering into and performing services under the Engagement Letter, including the costs of Moelis' legal counsel (without the need for such legal counsel to be retained as a professional in this chapter 11 case and without regard to whether such legal counsel's services satisfy section 330(a)(3)(C) of the Bankruptcy Code).

19.     Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving this Application and consistent with the proposed compensation set forth in the Engagement Letter.

20.     Moelis will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in this chapter 11 case. However, because: (a) it is not the general practice of investment banking firms such as Moelis to keep detailed time records similar to those customarily kept by attorneys; (b) Moelis does not

---

[5] Notwithstanding the terms of the Engagement Letter providing that, with respect to a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged plan, the Restructuring Fee shall be earned upon the execution of a definitive agreement with respect to such plan, Moelis has agreed to (i) delay payment of such Restructuring Fee to after consummation of Quality Care Properties, Inc.'s acquisition of the Debtor, and (ii) upon payment of such Restructuring Fee and payment of any Monthly Fees due and payable to Moelis, Moelis shall not seek payment of any additional Sale Transaction Fee or Capital Transaction Fee; *provided that* the foregoing agreement shall automatically terminate upon termination of the Plan Sponsor Agreement (as defined in the Plan), and, in such event, the terms of the Engagement Letter will otherwise control.  Prior to any termination of the Plan Sponsor Agreement, Moelis shall not be required to provide any services in connection with any Sale Transaction or Capital Transaction.

01:22995723.1

ordinarily keep time records on a "project category" basis; and (c) Moelis' compensation is based on a fixed Monthly Fee and fixed Transaction Fees, the Debtor respectfully requests that only Moelis' restructuring professionals be required to maintain records (in summary format) of the services rendered for the Debtor, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the restructuring professionals who provided those services. Moelis will present such records to the Court in its fee application(s). Moreover, the Debtor respectfully requests that Moelis' restructuring professionals not be required to keep time records on a "project category" basis, that its non-restructuring professionals and personnel in administrative departments (including internal legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Moelis would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtor respectfully requests that this Court waive such requirements.

21.     The Debtor believes the Fee Structure is consistent with, and typical of, compensation arrangements entered into by Moelis and other comparable firms in connection with the rendering of similar services under similar circumstances, both in and outside of bankruptcy proceedings. The Debtor also believes that the Fee Structure reflects a balance between a fixed monthly fee and contingency amounts, which are tied to the consummation and closing of one or more Transactions. In determining the Fee Structure and the reasonableness of such compensation, the Debtor compared Moelis' fee proposal to comparable precedents. After such comparison, followed by discussions and arm's-length negotiations, the Debtor believes

that the Fee Structure is in fact reasonable, market-based, and designed to compensate Moelis fairly for its work.

22. Moelis' strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which has been and will be required by the Debtor during the term of Moelis' engagement, were important factors to the Debtor in determining the Fee Structure. The Debtor believes that the ultimate benefits of Moelis' services under the Engagement Letter cannot be measured by reference to the number of hours to be expended by Moelis' professionals in the performance of such services. The Debtor and Moelis agreed upon the Fee Structure in anticipation of the substantial commitment of professional time and effort that would be required of Moelis and in light of the fact that (a) such commitment could have and may still foreclose other opportunities for Moelis, and (b) the actual time and commitment required of Moelis and its professionals to perform the Restructuring Services may vary substantially from week to week and month to month, creating "peak load" issues for Moelis.

23. During the 90-day period immediately preceding the Petition Date, the Debtor paid the following amounts to Moelis: (a) $206,327.01 on January 5, 2018 for its November 2017 Monthly Fee and related expenses; (b) $204,036.59 on January 12, 2018 for its December 2017 Monthly Fee and related expenses; (c) $204,909.06 on February 2, 2018 for its January 2018 Monthly Fee and related expenses; (d) $204,457.99 on February 23, 2018 for its February 2018 Monthly Fee and related expenses; and (e) $214,602.78 on March 2, 2018 for its March 2018 Monthly Fee and related expenses, including a $10,000 expense retainer. As of the Petition Date, the Debtor does not owe Moelis any fees for services performed or expenses incurred

under the Engagement Letter. Moelis is still reconciling how much of the expense retainer remains after application of its pre-petition expenses.

## INDEMNIFICATION

24. As part of the overall compensation payable to Moelis under the terms of the Engagement Letter, the Debtor has agreed to certain indemnification, contribution, and reimbursement obligations, set forth in Annex A of the Engagement Letter (the "<u>Indemnification Agreement</u>"). The Indemnification Agreement provides, among other things, that the Debtor will indemnify and hold harmless Moelis, its affiliates, and its or their respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (each, an "<u>Indemnified Person</u>" and collectively, the "<u>Indemnified Persons</u>") from and against any losses, claims, damages, expenses or liabilities (collectively, "<u>Losses</u>") (a)(i) related to the Debtor's actions or omissions (or the actions or omissions of the Debtor's officers, directors, employees, and agents other than Moelis) in connection with the Engagement Letter or matters referred to therein, or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Debtor or its agents in connection with the Engagement Letter or the matters referred to therein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Debtor to any purchaser or seller of a security in any transaction contemplated by the Engagement Letter), or (b) otherwise arising out of, related to or in connection with the Engagement Letter or Moelis' performance thereunder or any services or advice the Debtor requests any Indemnified Person to provide (in each case, including prior to the date of the Engagement Letter), except that clause (b) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

01:22995723.1

25. The Engagement Letter's indemnification, contribution, and reimbursement provisions were negotiated by the Debtor and Moelis at arm's length and in good faith and the Debtor respectfully submits that the indemnification, contribution, and reimbursement provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the Proposed Order. The Debtor believes that the indemnification provisions in the Engagement Letter are appropriate and reasonable for investment banking engagements both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions.

## NO DUPLICATION OF SERVICES

26. The Debtor does not believe that the services to be rendered by Moelis will be duplicative of the services performed by any other professional in the Debtor's chapter 11 case, and Moelis will use reasonable efforts to coordinate with the Debtor and the other professionals engaged by the Debtor to minimize and avoid duplication of services.

## MOELIS' DISINTERESTEDNESS

27. Moelis has reviewed a list of potential parties in interest provided by the Debtor and has researched its internal records to determine whether Moelis has any connections with respect to certain of those individuals and entities, which are listed on **Schedule 1** of the Keil Declaration. To the best of the Debtor's knowledge, information, and belief, and except to the extent disclosed herein and in the Keil Declaration, Moelis (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtor's estate; and (c) has no connection to the Debtor, its creditors, or other such potential parties in interest.

01:22995723.1

28. Given the large number of potential parties in interest in this chapter 11 case, despite the efforts to identify and disclose Moelis' relationships with potential parties in interest, Moelis is unable to state with certainty that every client relationship or other connection has been disclosed in the Keil Declaration. Moelis will make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to this Court if necessary or otherwise appropriate.

29. The Debtor is informed that Moelis will not share any compensation to be paid by the Debtor, in connection with services to be performed after the Petition Date, with any person, other than principals and employees of Moelis, to the extent required by section 504 of the Bankruptcy Code.

## BASIS FOR RELIEF

### I. The Debtor Should be Permitted to Retain and Employ Moelis on the Terms of the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code

30. The Debtor requests entry of the Proposed Order authorizing the Debtor to retain and employ Moelis as its investment banker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code. Section 328(a) provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

31. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the

nature of their services and market conditions. Once approved under section 328(a), the terms of a professional's retention are subject to modification only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.), 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

32. The Court's approval of the Debtor's retention of Moelis in accordance with the terms and conditions of the Engagement Letter is warranted.  First, as discussed above and in the Keil Declaration, Moelis satisfies the disinterestedness standard of section 327(a) of the Bankruptcy Code.[6]  Moelis had been advising the Debtor for approximately nine months prior to the commencement of this chapter 11 case and has already committed significant time and effort to this chapter 11 case.  Moelis is needed post-petition to continue to assist the Debtor and its other professionals in obtaining confirmation of the Plan and any other issues that may arise during the course of this chapter 11 case, as necessary, and to enable the Debtor to discharge its duties as debtor and debtor in possession.  Moelis has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  Moelis has become familiar with the Company's business operations, capital structure, financing

---

[6] Bankruptcy Rule 2014(a) requires that an application to retain a professional under section 327 of Bankruptcy Code shall, among other things, states, "to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to parties in interest.  See Fed. R. Bankr. P. 2014.  Here, the contents of this Application and the Keil Declaration satisfy the requirements of Bankruptcy Rule 2014.

01:22995723.1

documents, and other material information and is able to assist the Debtor in its restructuring efforts. The Debtor believes that Moelis is well qualified to provide its services to the Debtor in a cost-effective, efficient and expert manner.

33. The Fee Structure appropriately reflects the nature of the services to be provided by Moelis and is consistent with the fee structures typically utilized by leading investment bankers that do not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. See, e.g., In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [D.I. 657]; In re Basic Energy Services, Inc., Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) [D.I. 170]; In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [D.I. 289]; In re Dex Media Inc., Case No. 16-11200 (KG) (Bankr. D. Del. June 10, 2016) [D.I. 181]; In re Allied Nev. Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [D.I. 201].

34. The Debtor believes that the Fee Structure, including, without limitation, the indemnification, reimbursement, contribution, and related provisions set forth in the Engagement Letter, is market-based, fair and reasonable and should be approved under section 328(a) of the Bankruptcy Code in light of (a) industry practice, (b) market prices charged for comparable services both in and out of the chapter 11 context by other leading investment banks and financial advisors who do not bill their clients on an hourly basis, (c) Moelis' commitment to the variable level of time and effort necessary to perform the restructuring and investment banking services, and (d) Moelis' substantial experience with respect to investment banking services. Further, the Fee Structure appropriately reflects the nature of the services Moelis has agreed to provide.

35. Notwithstanding the foregoing, under the Proposed Order, the Office of the United States Trustee for the District of Delaware shall retain all rights to object to Moelis' fee applications in this chapter 11 case (including expense reimbursement) pursuant to section 330 of the Bankruptcy Code.

## II. The Court Should Modify the Time-Keeping Requirements of Local Rule 2016-2

36. Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue. Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

37. As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Moelis intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with this chapter 11 case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications.

38. The Debtor requests that the requirements of Local Rule 2016-2(d) and the U.S. Trustee Guidelines be modified to reflect the nature of Moelis' engagement and its compensation structure. Moelis has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate basis. In addition, it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. As discussed above, however, Moelis' restructuring personnel will keep summary time records in hourly

increments describing their daily activities and the identity of persons who performed such tasks. Apart from the time recording practices described above, however, Moelis' restructuring personnel do not maintain their time records on a "project category" basis. As such, the Debtor request modification of the requirements pursuant to Local Rule 2016-2(h), as detailed above.

39.  Similar fixed and contingency fee arrangements, with modified time-keeping requirements have been approved and implemented by courts in other large chapter 11 cases. See, e.g., In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [D.I. 657] (approving modified time-keeping requirements under similar circumstances); In re Basic Energy Services, Inc., Case No. 16-12320 (KJC) (Bankr. D. Del. Nov. 17, 2016) [D.I. 170] (same); In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [D.I. 289] (same); In re Dex Media Inc., Case No. 16-11200 (KG) (Bankr. D. Del. June 10, 2016) [D.I. 181] (same); In re Allied Nev. Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [D.I. 201] (same).

### III. The Terms of the Indemnification Agreement are Reasonable and Customary and Should Be Approved

40.  The indemnification, contribution, and reimbursement provisions of the Indemnification Agreement, as modified by the Proposed Order attached hereto, were fully negotiated between the Debtor and Moelis. The Debtor and Moelis believe that the indemnification provisions in the Engagement Letter are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases. The Debtor is seeking approval of the indemnification provisions consistent with other orders of the Court where Moelis has been retained. See, e.g., In re TK Holdings Inc., Case No. 17-11375 (BLS) (Bankr. D. Del. Aug. 30, 2017) [D.I. 657] (approving substantially identical indemnification provisions); In re Basic Energy Services, Inc., Case No. 16-12320 (KJC) (Bankr. D. Del. Nov.

17, 2016) [D.I. 170] (same); In re UCI Int'l, LLC, Case No. 16-11354 (MFW) (Bankr. D. Del. July 12, 2016) [D.I. 289] (same); In re Dex Media Inc., Case No. 16-11200 (KG) (Bankr. D. Del. June 10, 2016) [D.I. 181] (same); In re Allied Nev. Gold Corp., Case No. 15-10503 (MFW) (Bankr. D. Del. Apr. 15, 2015) [D.I. 201] (same).

41. Based on the foregoing, the Debtor submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtor to retain and employ Moelis in this chapter 11 case on the terms described herein and in the Engagement Letter, as modified by the Proposed Order.

**NOTICE**

42. Notice of this Application will be provided to (i) the U.S. Trustee; (ii) counsel to Quality Care Properties, Inc.; (iii) counsel to the administrative agent under the Company's prepetition credit facility; (iv) counsel to The Carlyle Group; (v) the U.S. Attorney's Office for the District of Delaware; (vi) the Internal Revenue Service; (vii) the U.S. Department of Justice; and (viii) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtor respectfully requests entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and granting such other and further relief as is just and proper.

Dated:  March 16, 2018  
Wilmington, Delaware

Respectfully submitted,

*/s/ John R. Castellano*
John R. Castellano
Chief Restructuring Officer
HCR ManorCare, Inc.