**Exhibit C**

**Engagement Letter**

MOELIS & COMPANY

June 2, 2017

CONFIDENTIAL

HCR ManorCare, Inc.
333 N. Summit St.
Toledo, Ohio 43604
Attention: Richard A. Parr, Vice President, General Counsel and Secretary

Dear Mr. Parr:

      This agreement confirms that since, April 24, 2017, HCR ManorCare, Inc. (the "Company") has engaged Moelis & Company LLC ("Moelis") to act as the Company's exclusive financial advisor, capital markets advisor and investment banker in connection with the Company's proposed Restructuring, Sale Transaction or Capital Transaction (each as defined below).

"Restructuring" means any restructuring, reorganization, repayment, refinancing, rescheduling or recapitalization of all or any material portion of the consolidated liabilities of the Company (including its direct or indirect subsidiaries), including, without limitation, any obligations under the Master Lease Agreement, together with all amendments and addenda thereto, dated as of April 7, 2011, between the Company, HCR Healthcare III, LLC ("Lessor") and the other parties thereto, however such result is achieved, including, without limitation, through a plan of reorganization or liquidation (a "Plan") confirmed in connection with a case (a "Bankruptcy Case") commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the United States Code (the "Bankruptcy Code"), an exchange offer or consent solicitation, covenant relief, a rescheduling of debt maturities, a change in interest rates, a settlement or forgiveness of debt, a conversion of debt into equity, or other amendments to the Company's debt instruments. For the avoidance of doubt, a Restructuring shall not include (i) any forbearance or similar agreement entered into in connection with that certain Credit Agreement, dated as of April 6, 2011, by and HCR Health Care III, LLC, JPMorgan Chase Bank, N.A. and the other parties thereto, or (ii) any forbearance or similar agreement with Lessor or its affiliates.

"Sale Transaction" means (a) the sale of all or a majority of the issued and outstanding equity securities of the Company or any of its subsidiaries to one or more third parties (including creditors) (an "Acquirer"), (b) the merger or combination of the Company or any of its subsidiaries with an Acquirer, (c) an Acquirer's acquisition of all or a significant portion of the assets, properties or business of the Company or any of its subsidiaries, including any credit bids, or (d) an Acquirer's acquisition of any business unit, division or specified discrete assets that Moelis may be asked to sell, in each case, that is consummated in-court in connection with a Bankruptcy Case. If a Transaction is both a Sale Transaction and a Capital Transaction, it shall be treated as a Capital Transaction. For the avoidance of doubt, any transaction in which the Carlyle Group or any of its direct or indirect subsidiaries or affiliates sells all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company or any of its subsidiaries to Quality Care Properties, Inc. for a nominal value shall be deemed a Restructuring and not a Sale Transaction, provided, however, that any purchase of all or a significant portion of the equity, interests, assets, properties, cash flows or businesses of the Company or any of its subsidiaries by Quality Care Properties, Inc. through a competitive auction or similar sales process shall be deemed a Sale Transaction.

"Capital Transaction" means a transaction in which the Company (or any of its subsidiaries or any entity formed to acquire the business or assets of the Company) raises or issues any (a) secured or unsecured

...

MOELIS & COMPANY

debt (including, without limitation, any asset-backed debt, or debtor-in-possession financing in connection with a Bankruptcy Case); (b) equity interests (including, without limitation, preferred stock or common stock) or equity-linked interests (including convertible debt); (c) hybrid capital; or (d) options, warrants or other rights to acquire equity interests.

A "Transaction" means either a Restructuring, a Sale Transaction and/or a Capital Transaction, as the context requires.

1. As part of our engagement, Moelis will if appropriate and requested:

   (a)  assist the Company in reviewing and analyzing the Company's results of operations, financial condition and business plan;

   (b)  assist the Company in reviewing and analyzing any potential Transaction;

   (c)  assist the Company in negotiating any Transaction;

   (d)  advise the Company on the terms of securities it offers in any potential Capital Transaction.

   (e)  advise the Company on its preparation of information memorandum for, a potential Sale Transaction or Capital Transaction (each, an "Information Memo");

   (f)  assist the Company in contacting potential Acquirers or purchasers of a Capital Transaction ("Purchasers") that Moelis and the Company agree are appropriate, and meet with and provide them with the Information Memo and such additional information about the Company's assets, properties or businesses that is acceptable to the Company, subject to customary business confidentiality agreements; and

   (g)  provide such other financial advisory and investment banking services in connection with any Transaction as Moelis and the Company may mutually agree upon.

Please note that Moelis does not provide legal, tax, accounting or actuarial advice. This agreement is not a commitment, express or implied, on the part of Moelis to purchase or place the Capital Transaction or any other financing and it is acknowledged that Moelis' services with respect to a Capital Transaction will be made on a reasonable best efforts basis. Moelis' obligations under this agreement with respect to a Capital Transaction are subject to, among other things: (i) satisfactory completion of its due diligence review and (ii) satisfactory market conditions.

2. (a) As compensation for our services hereunder, the Company agrees to pay Moelis the following nonrefundable cash fees:

Monthly Fee

   (i)  During the term of this agreement, a fee of $200,000 per month (the "Monthly Fee"), payable in advance of each month. The Company will pay the first Monthly Fee immediately upon the execution of this agreement, and all subsequent Monthly Fees prior to each monthly anniversary of the date of this agreement, provided, however, that 50%

MOELIS & COMPANY

of the Monthly Fees earned and paid starting after the commencement date of a Bankruptcy Case shall be credited (to the extent actually paid) against the Restructuring Fee (as defined below) earned in an In Court Restructuring (as defined below) (it being agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such credits to the Restructuring Fee earned in an In Court Restructuring result in a Restructuring Fee that is less than zero. Whether or not a Restructuring, Sale Transaction or Capital Transaction occurs, Moelis shall earn and be paid the Monthly Fee every month during the term of this agreement.

Restructuring Fee

(ii) At the closing of a Restructuring, a fee (the "Restructuring Fee") of:

(a) if the Restructuring is effected through a Plan confirmed in connection with a Bankruptcy Case commenced by or against the Company or any of its subsidiaries or affiliates under title 11 of the Bankruptcy Code (an "In Court Restructuring"), $10,000,000; or

(b) if the Restructuring is not an In Court Restructuring, $6,000,000.

For the avoidance of doubt, only one Restructuring Fee shall be due and payable pursuant to this agreement.

Sale Transaction Fee

(iii) In the event the Company pursues a Sales Transaction, a transaction fee (the "Sale Transaction Fee") consistent with market based fees that will be mutually agreed upon (in separate agreement containing customary terms) by the Company and Moelis in good faith and payable upon the closing of such Sale Transaction.

In the event of a Sale Transaction that is consummated pursuant to Section 363 of the Bankruptcy Code, such Sale Transaction shall trigger a Sale Transaction Fee, and any resulting or subsequent Restructuring involving the Company shall trigger a Restructuring Fee.

Capital Transaction Fee

(iv) At the closing of a Capital Transaction, a non-refundable cash fee (the "Capital Transaction Fee") of:

(a) 1.50% of the aggregate gross amount of debt obligations and other interests Raised in the Capital Transaction, plus

(b) 3.50% of the aggregate gross amount or face value of capital Raised (as defined below) in the Capital Transaction as equity, equity-linked interests, options, warrants or other rights to acquire equity interests.

The Company will pay a separate Capital Transaction Fee in respect of each Capital Transaction in the event that more than one Capital Transaction occurs. "Raised" includes the amount

MOELIS & COMPANY

committed to the Company, whether or not the Company draws the full amount, and whether or not the company applies such amounts to refinance any of its obligations.

The fees set forth in Section 2(a)(ii),(iii) and (iv) shall be referred to herein as the "Transaction Fees". The Company agrees that it will pay the applicable Transaction Fee(s) for each Transaction in accordance with the terms hereof.

In connection with a Transaction intended to be consummated in connection with a pre-packaged or pre-arranged Plan, the applicable Transaction Fee(s) shall be earned upon the execution of a definitive agreement with respect to such Plan; provided that if the Plan contemplating such Transaction(s) does not become effective, then Moelis shall credit the applicable Transaction Fee(s) against any future Transaction Fee that becomes due and payable upon the closing of another Transaction.

If, at any time prior to the end of the Tail Period (as defined below), the Company consummates any Restructuring, Sale Transaction or Capital Transaction or enters into an agreement or a Plan is filed regarding any Restructuring, Sale Transaction or Capital Transaction and a Restructuring, Sale Transaction or Capital Transaction is subsequently consummated, then the Company (or its bankruptcy estates) shall pay Moelis the applicable fee(s) specified in Section 2(a) above immediately upon the closing of any such Transaction(s). The "Tail Period" shall end (i) in the case of any Restructuring, Sale Transaction or Capital Transaction consummated out-of-court, 18 months following the expiration or termination of this agreement or (ii) otherwise 24 months following the expiration or termination of this agreement. Notwithstanding the foregoing, Moelis will not be entitled to fees during the Tail Period pursuant to this paragraph if Moelis unilaterally terminates this agreement in writing.

(b) Whether or not the Company consummates a Transaction, the Company will reimburse Moelis for all of its expenses as they are incurred in entering into and performing services pursuant to this agreement, including the costs of its legal counsel. Moelis agrees to provide the Company with reasonable support for its expenses at the Company's request or at the Bankruptcy Court's direction.

(c) The Company's obligation to pay any fees or expenses set forth herein or to pay any amounts under *Annex A* hereto are not subject to any reduction by way of setoff, recoupment or counterclaim. All fees, expenses and any other amounts payable hereunder are payable in U.S. dollars, free and clear of any withholding taxes or deductions, to the bank account set forth on *Schedule 1*.

(d) If Moelis is required to render services not set forth in this agreement, including, without limitation, producing documents, being deposed, providing testimony, relating to this agreement or the transactions contemplated by this agreement, the Company will pay Moelis additional fees to be mutually agreed for such services, plus reasonable costs and expenses related thereto.

(e) Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for it. Moreover, the actual time and effort required for the engagement may vary substantially from time to time. In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that the Company will require in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Company.

3. If a Bankruptcy Case is commenced:

MOELIS & COMPANY

(a) The Company will use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing our employment as the Company's exclusive financial adviser under this agreement pursuant to, and subject to the standards of review set forth in, section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in section 330 of the Bankruptcy Code), nunc pro tunc to the date of the filing of the Bankruptcy Case. The retention application and any order authorizing Moelis' retention must be acceptable to Moelis. Prior to commencing a Bankruptcy Case, the Company will pay all fees then earned and payable and will reimburse Moelis for all expenses that Moelis incurred prior to commencement in accordance with this agreement.

(b) Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under section 328(a) of the Bankruptcy Code within 60 days following the filing of a voluntary chapter 11 case or the entry of an order for relief in any involuntary chapter 11 case. If neither the Company nor Moelis obtain such an order within such 60-day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement, and the Company shall reimburse Moelis for all fees owing and expenses incurred prior to the date of termination, subject to the requirements of the Bankruptcy Rules, and Moelis shall be entitled to a contingent claim with respect to any fees that become payable under the last paragraph of Section 2(a).

(c) Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. Following entry of an order authorizing our retention, the Company will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support Moelis' fee applications that are consistent with this agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly our fees and expenses approved by the Bankruptcy Court and in accordance with the Bankruptcy Rules.

(d) The Company will use its reasonable best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization or liquidation in the Bankruptcy Case contains typical and customary releases (both from the Company and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, managers, members, agents, representatives and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4. The Company will furnish Moelis with all information concerning the Company and, to the extent available to the Company, the Acquirer as Moelis reasonably deems appropriate (collectively, the "Information") to execute this engagement and will provide Moelis with access to the Company's officers, directors, employees, accountants, counsel and other representatives of the Company and, as practicable, those of the Acquirer. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading. The Company will advise Moelis promptly of any material event or change in the business, affairs, condition (financial or

MOELIS & COMPANY

otherwise) or prospects of the Company or, to the Company's knowledge, the Acquirer that occurs during the term of this agreement. In performing our services hereunder, Moelis will be entitled to use and rely upon the Information as well as publicly available information without independent verification. Moelis is not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities of the Company. Moelis is not evaluating the solvency of any party under applicable laws relating to bankruptcy, insolvency or similar matters. Moelis will be entitled to assume that financial forecasts and projections the Company or any Acquirer makes available to Moelis have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company or such Acquirer, as the case may be, as to the matters covered thereby. The Company authorizes Moelis to transmit any Information Memos to potential parties to a Sale Transaction or Capital Transaction. The Company will be solely responsible for the contents of any Information Memo and all other information provided to prospective Purchasers in a Capital Transaction.

Moelis will not disclose to any third party nonpublic Information concerning the Company or the Transaction parties provided to Moelis in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) Moelis may provide nonpublic Information to prospective Transaction parties as contemplated by this agreement. This paragraph shall terminate one year following the date of this agreement.

The Company represents and warrants to Moelis that the information provided to any prospective purchaser or seller of a security by or on behalf of the Company in any Restructuring, Sale Transaction or Capital Transaction (or any combination thereof), at the closing thereof, taken as a whole, will not contain any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary to make the statements contained therein, in light of the circumstances under which they were made, not misleading.

At the closing of a Capital Transaction pursuant to an exemption from registration other than Section 1145 of the Bankruptcy Code, (i) the Company shall be deemed to make all the representations and warranties to Moelis that the Company has made to purchasers of any security, (ii) the Company shall deliver to Moelis an opinion of Company counsel to the effect that the Capital Transaction was exempt from registration under the Securities Act of 1933, as amended, and which shall also include all opinions delivered to the purchasers of any security, (iii) the Company shall deliver to Moelis from each purchaser of securities for Moelis' express benefit a big boy representation in the form of *Annex B* and (iv) the Company will also deliver to Moelis copies of such agreements, opinions, certificates and other documents delivered at the closing as Moelis may reasonably request.

 5. The Company will not disclose, summarize or refer to any of Moelis' advice or the terms of this agreement publicly or to any third party without the prior written consent of Moelis. In the event disclosure is required by subpoena or court order, the Company will provide Moelis with reasonable advance notice and permit Moelis to comment on the form and content of the disclosure. Moelis may, at our option and expense after announcement of any Transaction, announce or disclose publicly such transaction and Moelis' role in it for marketing purposes, including, without limitation, on Moelis' website, stating that Moelis has acted as exclusive financial advisor and/or investment banker, as applicable, to the Company in connection with any Transaction. If requested by Moelis, the Company shall include a mutually acceptable reference to Moelis in any public announcement of a Transaction.

MOELIS & COMPANY

Following a public announcement or public confirmation or Company public filing relating to a potential Transaction, Moelis may also announce or disclose publicly its role in the potential Transaction.

6. Moelis is an independent contractor with the contractual obligations described herein owing solely to the Company. The parties agree that Moelis is not acting as an agent or fiduciary of the Company or any other party, and the Company agrees to not make any claims against Moelis based on an agency or fiduciary relationship. The Company and Moelis agree to the indemnity and other provisions set forth in *Annex A*. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement.

7. Either the Company or Moelis may terminate this agreement upon written notice thereof to the other party.  In the event of any termination, (i) Moelis will continue to be entitled to the fees and expenses that became payable hereunder prior to termination or expiration and (ii) *Annex A*, the last paragraph of Section 2(a) and Sections 3 through 9 shall remain in full force and effect after the completion, termination or expiration of this agreement.

8. Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the interests of the Company. Moelis and its affiliates have no duty to disclose to any party, or use for the benefit of any party, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities laws in connection with the purchase and sale of such securities.

Moelis is required to obtain, verify, and record information that identifies each party with whom it does business in a manner that satisfies the requirements of and in accordance with the USA Patriot Act. Upon request, each of the parties hereto will provide Moelis with information necessary to verify such party's identity for purposes of the USA Patriot Act.

9. This agreement and any disputes or claims that may arise out of this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Company and Moelis. If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect. Any proceeding arising out of this agreement shall be heard exclusively in a New York state or federal court sitting in the city and county of New York, to whose jurisdiction and forum Moelis and the Company irrevocably submit. The Company also irrevocably consents to the service of process in any such proceeding by mail to the Company's address set forth above.  This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  This agreement shall be binding upon the Company and Moelis and its and our respective successors and permitted assigns. MOELIS AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY PROCEEDING ARISING OUT OF THIS AGREEMENT.

MOELIS & COMPANY

*(Signature page follows)*

- 8 -

MOELIS & COMPANY

Moelis is delighted to accept this engagement and looks forward to working with the Company. Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____
    Name:
    Title:

Agreed to as of the date first written above:

HCR MANORCARE, INC.

By: _*[signature]*_____
    Name: PAUL A ORMOND
    Title: CEO

-9-

MOELIS & COMPANY

## ANNEX A

In the event that Moelis or its affiliates or any of Moelis' or Moelis' affiliates' respective current or former directors, officers, partners, managers, members, agents, representatives or employees (including any person controlling Moelis or any of its affiliates) (collectively, the "Indemnified Persons") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "Action") arising out of, related to or in connection with this agreement or any matter referred to herein (including, without limitation, related matters prior to the date of this agreement), the Company will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company each agrees that no Indemnified Person shall have any liability to the Company or its affiliates, or their respective owners, directors, officers, employees, security holders or creditors for, any losses, claims, damages, expenses or liabilities (collectively, "Losses") (A)(i) related to the Company's actions or omissions (or the actions or omissions of the Company's officers, directors, employees and agents other than Moelis) in connection with the agreement or the matters referred to herein), or (ii) related to or arising out of oral or written statements or omissions made or information provided by the Company or its agents in connection with the agreement or the matters referred to herein (including, without limitation, the Information Memo and any other information provided by or on behalf of the Company to any purchaser or seller of a security in any transaction contemplated by the agreement), or (B) otherwise arising out of, related to or in connection with this agreement or Moelis' performance hereunder or any other services or advice the Company requests any Indemnified Person to provide (in each case, including prior to the date of this agreement), except that this clause (B) shall not apply to Losses to the extent such Losses are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation on liability for any reason is not available or is insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company, on the one hand, and by Moelis, on the other hand, with respect to this agreement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company, on the one hand, and of Moelis, on the other hand, and any other equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by Moelis from the Company in connection with this agreement. Relative benefits to the Company, on the one hand, and Moelis, on the other hand, with respect to this agreement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by this agreement bears to (ii) the fees actually received by Moelis in connection with this agreement.

The Company will not without the prior written consent of Moelis (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "Settlement") any Action or participate in or facilitate a Settlement of any Action in respect of which indemnification is or may be sought hereunder (whether or not an Indemnified Person is a party thereto) unless such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent. No Indemnified Person seeking indemnification, reimbursement or contribution under

MOELIS & COMPANY

this agreement will, without the Company's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action. The Company's obligations set forth herein shall be in addition to any rights that any Indemnified Person may have at law or otherwise.

Prior to effecting any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of its assets or any significant recapitalization or reclassification of its outstanding securities that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify Moelis in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example through insurance, surety bonds or the creation of an escrow) upon terms and conditions reasonably satisfactory to the Company and Moelis.

MOELIS & COMPANY

## ANNEX B

**Big Boy Representation**

The undersigned Purchaser represents and warrants that (i) the Purchaser is a sophisticated institutional accredited investor with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling their securities; (ii) the Purchaser has conducted and relied upon its own due diligence investigation of the Company and its own in-depth analysis of the merits and risks of the Capital Transaction in making its investment decision and has not relied upon any information provided by Moelis or any investigation of the Company conducted by Moelis; and (iii) the Purchaser agrees that Moelis shall have no liability to the Purchaser in connection with its purchase of the Capital Transaction.

MOELIS & COMPANY

## ANNEX C

"Transaction Value" shall equal the sum of (A) in the case of the sale, issuance or exchange of equity securities, the total consideration received or to be received for such securities (including amounts payable to holders of options, warrants and convertible securities and amounts held in escrow, and including amounts that are paid, at the direction of the Company, to retire or defease indebtedness of the acquired company or any of its subsidiaries or to cure defaults under executory contracts to be assumed), plus payments made in installments, amounts payable in connection with the Sale Transaction under consulting agreements, agreements not to compete or similar arrangements (including such payments to management), and contingent payments (whether or not related to future earnings or operations); (B) in the case of a sale or disposition of assets, the total consideration paid or received or to be paid or received for such assets (including amounts held in escrow and installment payments, and including amounts that are paid, at the direction of the Company, to retire or defease indebtedness of the acquired company or any of its subsidiaries or to cure defaults under executory contracts to be assumed), plus contingent payments (whether or not related to future earnings or operations); and (C) (i) in the case of the sale, issuance or exchange of equity securities, the principal amount of all indebtedness for borrowed money as set forth on the most recent consolidated balance sheet (the "Balance Sheet") of the acquired company prior to the consummation of the Sale Transaction (less the amount of cash and cash equivalents up to but not exceeding the total amount of indebtedness set forth on the Balance Sheet) and (ii) in the case of a sale or disposition of assets, the principal amount of all indebtedness for borrowed money as set forth on the Balance Sheet that the Acquirer assumes or acquires; and (D) the value implied in the Sale Transaction of any equity or assets retained by the security holders of the acquired company upon consummation of the Sale Transaction (such equity to be valued at the same price per share as paid in the Sale Transaction).

In the case of a joint or collaborative venture, strategic alliance or similar transaction (a "Joint Venture"), Transaction Value shall equal (i) the aggregate value, as Moelis and the Company mutually agree in good faith, of the proceeds, assets and other consideration all parties to the Joint Venture pay or contribute in connection with the Sale Transaction, including, without limitation, cash, notes, securities, installment or contingent amounts, intellectual property, licenses, distribution agreements and other property; or (ii) in the event the Sale Transaction does not involve the payment or contribution of consideration to a Joint Venture, such amount as Moelis and the Company mutually agree in good faith.

Transaction Value also shall include any (i) dividends or other distributions paid on the acquired company's securities, other than normal recurring cash dividends in amounts not materially greater than currently paid; and (ii) amounts the acquired company pays to repurchase any of its securities (excluding repurchases pursuant to and consistent with any current stock repurchase program of the acquired company).

The Company will pay any portion of the Sale Transaction Fee attributable to contingent payments constituting Transaction Value upon consummation of the Sale Transaction, based on the present value of such amounts, using a discount rate and probability of payment that the Company and Moelis mutually agree; provided amounts paid into escrow shall be deemed paid at closing.

MOELIS & COMPANY

## SCHEDULE 1

Wire Instructions:
Beneficiary Account: Moelis & Company LLC
Routing Number: 122016066
Account Number: 412956230
International SWIFT Code: CINAUS6L

City National Bank
525 S. Flower Street
24th Floor
Los Angeles, CA 90071

MOELIS & COMPANY